## GREAT SOUTHERN LIFE INS. CO. v. HARRINGTON et al.

### No. 11284.

Court of Civil Appeals of Texas.
San Antonio.

April 28, 1943.

Rehearing Denied May 26, 1943.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellant.

K. D. Hall, of Refugio, for appellee.

NORVELL, Justice.

Great Southern Life Insurance Company has appealed from a judgment rendered against it in favor of Ruby Harrington, the beneficiary under a life insurance policy alleged to have been issued on the life of Millard Lloyd Harrington. Trial was to the court without the assistance of a jury, and express findings of fact and conclusions of law appear in the record.

The evidence is for the most part undisputed. Appellant presents numerous points in its brief. We shall not attempt to discuss all of them, as it appears that the application for insurance signed by Harrington, the insured, contained a provision that "the insurance hereby applied for shall not take effect until a written, or printed policy shall have been actually delivered to and accepted by me, while I am in good health, and the first premium shall have been actually paid, during my life and while I am in good health. * * *" The evidence conclusively shows that there was no delivery of the policy in accordance with the terms of the above-quoted contractual provision. Consequently, there never was a binding insurance agreement in existence covering the life of Millard Lloyd Harrington and the judgment appealed from must be reversed and judgment here rendered that appellee take nothing.

The statement hereinafter set out is supported by the trial court's finding, or the undisputed documentary evidence in the case, and is pertinent to the conclusion or holding above announced. We need not and do not state additional facts which have reference to points raised by appellant having reference to contentions other than the nondelivery of the policy in accordance with the terms of the application.

The deceased, Harrington, signed the application above mentioned on January 13, 1942, and delivered the same to Edgar L. Albrecht, the agent of the company. The trial court found: "That by the original application, the policy applied for was listed as 'Part. 20 PL D. I.,' meaning a participating 20 pay life double indemnity. Under such a policy if issued, the com-

pany's liability on account of insured's death from any cause would have been $1,500, and double the amount if death was due to accidental means as provided in the double indemnity rider."

The application contained an inquiry, which Harrington answers as follows:

"30. Have you ever engaged in aeronautic flights or have you any intention of doing so? (Answer fully)

"Yes, took some private lessons. I have no intention of ever flying again."

Albrecht forwarded the application to the insurance company which desired further information concerning Harrington's aeronautical activities. On January 20, 1942, Harrington executed an amendment to his original application in which he gave the information requested by the company in answering seven interrogatories submitted.

By this amendment Harrington did not agree to any special restriction being inserted in the policy applied for. The following clause printed in the face of the amendment form therefore had no applicability: "If, by the above amendment, I have agreed to any special restriction in the policy applied for in my original application, the consideration for such agreement shall be deemed to be the issuance of such policy containing such restriction."

After receiving the information contained in the amended application, the insurance company caused a policy to be written which was not in accordance with the terms of the application for insurance made by Harrington, in that an aeronautic exclusion rider was inserted which provided that: "In the event of the insured's death as a result, directly or indirectly, of service, travel or flight in any kind of aircraft, except as a fare-paying passenger in a licensed passenger aircraft operated by a licensed pilot on a regular passenger route between definitely established airports, it is understood and agreed that the amount payable by the Company under this policy as a death benefit shall be a sum equal to the total amount of premiums paid on the policy less any indebtedness on the policy, and no more. Such payment shall be in full settlement of all claims and demands hereunder."

On February 17, 1942, the manager of the Policy Department of the Insurance Company mailed to its agent Albrecht the prepared policy; a further amendment to

the original application relating to the amount of premiums; and a supplemental contract mentioned as an aeronautic exclusion rider. Accompanying these instruments was the following letter of instructions:

"February 17, 1942
S. D. 415
513227 - Millard L. Harrington
Mr. E. L. Albrecht
Goliad, Texas
Dear Mr. Albrecht:

The Underwriting Committee in passing on this application has declined the Waiver of Premium benefit and asked that an Aeronautic Exclusion Rider be inserted in the policy.

There accompanies the policy an amendment to be signed authorizing the changes made in the application and a copy of the Aeronautic Rider to be signed accepting the policy with this modification. These items are to be returned just as promptly as possible for our records.

Yours very truly,
N. Carlton Smith
Manager Policy Department."

This letter, together with the mentioned enclosures, was in the post office at Goliad, Texas, at the time Millard Lloyd Harrington died as the result of an automobile accident.

■ It seems clear that the policy had not actually been delivered to and accepted by Harrington while in good health.

The policy was not taken from the post office by Albrecht until after Harrington was dead.

The trial court, among others, made the following findings:

"I find that if the policy, which is marked 'Plaintiffs' Exhibit 2,' had been delivered to Mr. Lloyd Harrington before his death he would have accepted the same.

"I find that the said M. Lloyd Harrington by executing said amended application became bound to accept the policy finally issued.

"I find that there was a constructive delivery of said policy of insurance before the insured M. Lloyd Harrington sustained the injury herein mentioned in paragraph 14 hereof."

■ The first of the findings above set out is wholly immaterial. A meeting of minds is necessary to the existence of any

valid agreement including an insurance contract.

■ The second finding is based upon an erroneous construction of the written instruments involved.

As to the third finding, assuming a constructive delivery to be sufficient to satisfy the provisions of the application calling for an actual delivery (a point not here necessary to pass upon), we hold the evidence insufficient to support a finding of constructive delivery. New York Life Insurance Co. v. Mason, 151 Ark. 135, 235 S.W. 422, 423, 19 A.L.R. 618, 621; Texas Life Ins. Co. v. Mansel, Tex.Civ.App., 105 S.W.2d 899.

Appellee in her brief agrees "that the provision (as to actual delivery of the policy) was binding upon the insured and appellee unless waived. * * *" We find no evidence of waiver in the record.

■ As stated by appellant, "the judiciary has never had delegated to it by any constituted authority the power to make contracts for its citizens." Harrington and the Great Southern Life Insurance Company did not finally agree upon the provisions and terms of an insurance contract. There was no contract and consequently there can be no recovery. American Home Life Ins. Co. v. Melton, Tex. Civ.App., 144 S.W. 362, writ refused; Great Southern Life Insurance Co. v. Alcorn, Tex.Civ.App., 80 S.W.2d 429, writ refused.

Reversed and rendered.