## REPUBLIC NAT. LIFE INS. CO. v. HALL.

### No. 15094.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 6, 1950.

Rehearing Denied Feb. 10, 1950.

Charles H. Storey and J. Willard Gragg, Dallas, for appellant.

Seaberry & Hagman and Ben Hagman, Weatherford, Hill, Paddock & Langdon and Homa S. Hill, Fort Worth, for appellee.

HALL, Justice.

Appellee Ruth A. Hall sued appellant Republic National Life Insurance Company in the district court of Parker County, alleging she was beneficiary in a life insurance policy issued by appellant on the life of her deceased husband for the principal sum of $20,000.00

Appellant filed, among other defenses, it did not owe appellee on said policy because same never became effective for the following reasons:

(1) Said policy had not been delivered to the insured.

(2) No premium had been paid by insured.

(3) The policy was dated May 1, 1949 as its initial effective date, whereas appellee's late husband, George W. Hall, died prior thereto on April 10, 1949.

(4) The policy as written provided for increased amount of premium never agreed to by the said George W. Hall, deceased.

(5) The first premium was not paid by insured during his lifetime and in good health, as required by the application and policy.

Trial was to a jury and upon answers to special issues submitted to it the court rendered judgment in favor of appellee for the face value of the policy, plus interest and attorney's fee, less the amount of the premium for one year.

Appellant perfected its appeal and submits to this court five points of error.

The ultimate issue to be decided in this case springs largely from contents of the written application and the policy as provided by Articles 4732, 5050 and 5063, R. C.S., such issue being, was there a completed contract between the parties under the terms of the policy and the application?

■ Appellant's first three points of error pertain to said ultimate issue and in determining whether or not such ultimate issue was met by the evidence of appellee, that is, did she discharge the burden of proof by a preponderance of the evidence that the policy of insurance in question on the life of her late husband, George W. Hall, was issued by appellant and was in force at his untimely death, we will briefly review the evidence in the light most favorable to the judgment of the trial court.

On March 17, 1949, George W. Hall, deceased, signed an application for life insurance with appellant's soliciting agent, applying for a $20,000 ordinary life policy, designating applicant's age to be thirty-six,

and the application was left blank as to the amount of premium to be paid.

On March 22, 1949, said George W. Hall, deceased, signed an amendment to the application, changing his policy from ordinary life to twenty year pay life.

On March 17, 1949, said George W. Hall, deceased, signed a salary deduction order in blank, payable to appellant, and sent the same to appellant along with his application, same being as follows:

"Salary Deduction Order
"Date Mar. 17, 1949
"I hereby authorize my employer Wfd Mfg Co to pay the monthly premium of $——, on my Policy No. —— to the Republic National Life Insurance Company and deduct said amount from my salary each month, until further notice in writing.
"(Signed) George W. Hall
"Signature of Applicant"

Appellant became satisfied with its risk by issuing Policy No. 68235 upon the life of George W. Hall, premium payable monthly at the rate of $78.79, beginning on the first day of May, 1949. Appellant registered the policy with the State Department of Insurance as follows:

"State of Texas
"Department of Insurance
"Austin, Apr 8 1949 19—
"This policy is Registered, and Approved Securities equal in value to the Legal Reserve hereon are held in trust by the Commissioner of Insurance of the State of Texas.
"George B. Butler
"Commissioner of Insurance"
(Seal)

which registration is in compliance with Article 4741, Vern.Ann.Civ.St. This policy was mailed out of appellant's home office to its soliciting agent who received it on April 9, 1949. Appellee's husband was untimely killed in an airplane accident in the State of Wyoming on April 10, 1949, without having seen the policy and without said policy having been delivered to his home or his business office.

Appellant rated the deceased's age up to forty-four years and issued the policy for $20,000 on twenty year payment life plan as ordered by the deceased.

While it is true that said policy of insurance was postdated as of May 1, 1949, some twenty days in advance of the death of George W. Hall, and that no cash premium was ever paid thereunder, and while it is generally the law that the date on the face of the policy controls the date from which the premium is to be computed, yet such date will not necessarily control the date when the policy became effective, especially when the written application, which must be construed along with the policy, contains the following: "That the insurance hereby applied for shall not take effect unless the first premium is paid by me during my lifetime and good health, and unless otherwise agreed in writing, the policy of Life Insurance, if any, shall relate back to and take effect as of the date of this application," and also construed together with appellant's Exhibit "C", which accompanied said policy to its agent for delivery to the insured, to-wit: "For convenience this policy has been dated to conform with Payroll Deduction or Bank Service Order arrangements applicable to this case. If the policy as issued is on the plan applied for without modification it is now in force, otherwise it will be in force from the date it is accepted by the applicant. Republic National Life Insurance Company"; also construed together with the salary deduction order which appellant accepted in lieu of cash for payment of first premium.

Appellee pleaded appellant waived the provisions in the application, "that the insurance hereby applied for shall not take effect unless the first premium is paid by me during my lifetime and good health" by extending credit and accepting the salary deduction order and incorporating a salary deduction premium rider in the policy. The above-quoted portion of the written application by its instruction to its agent states that "if the policy as issued is on the plan applied for without modification it is now in force * * *." Appellant also waived its cash payment by accepting the deceased's salary deduction order. In this connection we note the significance

904

which appellant attaches to said salary deduction method of paying monthly premiums by reducing said monthly premiums from $78.79 to $72.94, as set out in an attached instrument to the policy reading as follows:

"Republic National Life Insurance
Company
"Dallas, Texas
"Salary Deduction Premium Rider
"Attached to and forming a part of Policy No. -68235- issued on the life of * * * George W. Hall * * *.
"At the request of the Insured the Company will accept a monthly premium of $72.94 on the salary deduction basis on this policy including any premiums for Disability or Accidental Death Benefit herewith attached, and on any such premiums hereafter becoming due, prior to any change in the Annual premium in accordance with the policy provisions.
"If for any reason such deductions cease to be made, then the premiums coming due thereafter, prior to any change in the Annual premium in accordance with the policy provisions shall be in the amount of $78.79 payable Monthly in advance direct to the Company.
"Date May 1, 1949.
"H. H. Campbell      Theo P. Beasley
"Assistant Secretary        President."

We do not find in the record contents of explanations from appellant's agent to it, if any, giving the reasons why the amount of premium was left blank in the application but we assume such absence of premium was satisfactory with appellant or it would not have issued the policy without first ascertaining if the premium as set by them would first be agreeable to deceased.

A portion of the oral testimony pertaining to the premium being undetermined at the time the application was signed is substantially as follows:

Deceased inquired of appellant's agent whether a policy of insurance could be obtained providing for airplane coverage; the agent advised him that such a policy was available and that the increase in premium would be approximately $5.00 per thousand, but the amount was not exactly determined. The agent also informed him he would no doubt be rated up higher than the average person of his age because of his overweight and his general stature. Appellant's agent upon cross-examination testified in part upon this subject, without objection, as follows:

"Q. At the time you were talking to George W. Hall with reference to * * * that life insurance policy did you know what the aviation premium would be? A. I told him it would be about $5.00 per year.

"Q. Did it turn out to be $5.00? A. Yes.

"Q. You knew George W. Hall was a well, healthy man, but overweight. A. Yes.

"Q. And you knew his insurance would be rated up by them and you told him the Company would do that? A. Yes.

"Q. And that is why you didn't put any definite amount of premium? A. Yes.

"Q. And that is the reason you didn't put the amount in the salary deduction order? A. Yes.

"Q. You sent it in and you knew it would be put in with the salary deduction order? A. I told him I didn't know what the rate would be; that it would have to be a special rate case.

"Q. What did George tell you in response to that; he told you he wanted the insurance? A. Yes; I told him that was what we could get."

Appellant's witness, H. H. Campbell, assistant secretary and manager of appellant's Policy Issue Department, testified in part upon cross-examination as follows, without objection from appellant:

"Q. With regard to that extended insurance you have explained to the court, Mr. Campbell, this was a 20-year payment life policy, at the end of twenty years it is a paid up policy? A. Yes.

"Q. Then it extends on all the rest of his life as a $20,000.00 policy? A. Yes.

"Q. So, actually it is an extended policy after twenty years; he doesn't pay any more? A. Yes.

"Q. And he is still covered with insurance the rest of his life extended from the time he paid the last premium until he dies? A. Yes.

"Q. Now, that policy covers not only a wreck in a plane that is a commercial air line, but also covers death caused by flight in a privately-owned plane? A. Yes.

\* \* \* \* \* \*

"Q. No policy of insurance is issued by your Company unless there is an application for it? A. That's right.

"Q. Yor have George W. Hall's application in your hands? A. Yes.

"Q. And it is a part of that policy? A. Yes.

"Q. In issuing that policy did you demand any other application from Mr. Hall to go with the policy? A. No.

"Q. Then, you issued that policy on George W. Hall's original application? A. That was the basis.

"Q. And you issued it on his application? A. Yes.

\* \* \* \* \* \*

"Q. You are familiar with the application and the terms of the application, aren't you? A. Yes.

"Q. You are familiar with where it says, 'unless otherwise agreed to in writing, this policy dates back to the date of the application?' A. I have seen that; yes.

"Q. Do you have any written agreement to change it? from March 17th to May 1, 1949? A. No.

"Q. This card you sent along says 'this is for convenience sake;' is that correct? A. Yes.

\* \* \* \* \* \*

"Q. I will ask you is there, within your knowledge, any requirement of delivery set out in the policy? A. No."

We find from the facts in the case that the policy issued by appellant was in accordance with the application signed by George W. Hall, deceased, that such policy contained no modification or change and therefore became effective as of date of application.

We find further that since the deceased signed his application leaving the amount of the premium in blank and salary deduction order in blank, and since appellant saw fit to issue the policy upon such authority from deceased to fill in the correct amount, that such acceptance upon the part of appellant became effective and took the place of "that the insurance hereby applied for shall not take effect unless the first premium is paid by me during my lifetime and good health."

It is a general rule of law that the filling in of blanks in an instrument after delivery is not considered as an alteration, and as stated in 2 Tex.Jur., p. 708, sec. 16, "Where a writing containing unfilled blanks has been delivered, the recipient has, according to a recognized rule, an implied authority to fill the blanks. \* \* \* In harmony with the proposition first stated, it is held that, if the amount payable is left blank, any holder of the instrument may fill in the correct amount. \* \* \*"

As stated in the case of Sentinel Fire Ins. Co. v. Anderson, Tex.Civ.App., 196 S.W.2d 649, 651, "If one signs an instrument containing blanks, he must be understood to entrust to the person to whom it is delivered the duty of properly filling in the blanks according to the agreement between the parties, and when so filled in the instrument is as good as if it had been originally executed in complete form."

In the case of Wagner v. Erwin, Tex. Civ.App., 27 S.W.2d 309, error refused, it is said: "The authorities are numerous that, when the maker of a promissory note leaves the amount blank and delivers it to the proper party, with instructions to fill in the amount, he is denied the right to call in question that conferred special authority and the act of filling in the note, provided it is reasonable and done without fraud; and the note so filled in will be held to stand."

Next we find that portion of the application which states as follows: "\* \* \* and unless otherwise agreed in writing, the

policy of life insurance, if any, shall relate back to and take effect as of the date of this application," was effective and that the date on the policy merely refers to the date when premiums are due as is in accord with appellant's further instructions to its agent, as follows: "For convenience this policy has been dated to conform with Payroll Deduction or Bank Service Order arrangements applicable to this case."

■ It is interesting to note that the policy does not carry the usual provision to the effect there shall be no liability by the insurer until said policy shall be manually delivered to the insured and accepted by him during his lifetime, etc. However, if said policy did have such provisions, the law will always allow such clause to be waived by the insurance company under appropriate circumstances and actions not inconsistent with the law of this state.

The Court had before it in the case of United Fidelity Life Ins. Co. v. Handley, 126 Tex. 147, 86 S.W.2d 201, 202, the following: " * * * The only question for decision here is whether or not there was actually a contract of insurance upon the life of M. L. Handley at the time of his death. * * *" Handley made arrangements with the company's agent to pay the premium on the policy and on September 29, 1931 said agent wrote the company a letter containing the following provision: " 'Mr. Handley has consented to take this policy, provided the extra rate of $10.00 per 1000. is for only one year. He also does not think that you should charge him for the initial term premium as the time under the initial term has practically expired and he has had no protection. He thinks that you should change the date of his application and let the premiums mature annually from this date. I told him that I would take this up with you but could not promise him what action you would take.' " This letter reached Dallas sometime during the date of September 30, 1931, containing a personal check of the agent for the company's premium. Handley was accidentally killed about 3:00 or 3:30 o'clock on the same day. Our Supreme Court found in part the following:

"It will be noted that the subdivision (b) quoted above provided that 'If the first premium is paid when my application is taken * * * the insurance shall be effective as soon as my application is approved by the Company.' We think this is exactly what happened in this instance. It is true that there is the further contention 'and a policy issued as originally applied for,' but there is no requirement that such policy shall be delivered. In fact, it is clear that this provision relates to 'initial term insurance,' which manifestly was intended to be effective before delivery of the policy. While it is not clear whether the policy which was issued on September 30th was exactly like the policy originally applied for on August 12th, we do not think this is material. The company unquestionably treated the transaction evidenced by the letters of September 26th and September 29th as constituting a new application or a renewal of the old application, and we think it but reasonable to say that the policy was issued 'as originally applied for' as the result of these new proceedings. * * *

"We think from the foregoing that it was clearly shown that the first premium was paid when the application was taken, that it was accepted, the application approved, and that the policy was issued; therefore, under the terms of subdivision (b), above quoted, the insurance was in effect prior to the death of Handley, even though the policy was not delivered." See also Pardee v. Universal Life Ins. Co., Tex.Civ.App., 170 S.W.2d 852; 1 Cooley's Briefs on Insurance, pp. 697, 711 and 719.

Appellant cites the following cases in support of its argument to secure a reversal in this case, to-wit:

Great Southern Life Ins. Co. v. Harrington, Tex.Civ.App., 171 S.W.2d 538. It is noted in that case the application expressly provides for delivery of the policy to the insured before such policy should be effective. It is further noted that the agent did not receive the policy until after the insured's death, which indicated there was no negligence on the part of the company in failing to deliver the policy.

In the case of Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660, the application was executed for a policy of $5,000 and the company rejected such application but tendered a policy in the sum of $2,500; said contract also provided for a manual delivery of the policy to the insured and the acceptance thereof before such policy could be effective.

The case of Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623, provides also that application and policy shall not become effective until actual delivery to the insured. It is also noted that Statler actually refused to accept the policy and requested certain changes therein.

The facts in the case of American Ins. Union v. Lowry, 5 Cir., 62 F.2d 209, indicate there was a very distinct and material difference between the application and the policy; it also provides for a manual delivery to the insured before such policy shall be effective.

In the case of Guarantee Fund Life v. Barclay, Tex.Civ.App., 11 S.W.2d 231, the court specifically pointed out there was no evidence of acceptance or approval of the application, whereas in the case at bar the assistant secretary and manager of appellant specifically testified the policy in question was issued by appellant upon the aplication made by George W. Hall.

In the case of Wallingford v. Home Mutual Fire and Marine Ins. Co., 30 Mo. 46 (by the Supreme Court of Missouri), the application provided for a premium rate of 9% but the policy issued provided for a premium of 15%. The court there applied the general and accepted rule holding that one proposition having been made but not accepted, a counter proposition being tendered and unaccepted—therefore no contract.

■ Having read all of appellant's cases cited, we find they are not in point and have come to the conclusion that a contract of insurance between the parties was completed and nothing was left open for future negotiations, even though appellant accompanied the policy with instructions to its agent of allowing the insured an option to change the policy if he so desired, but the law will not impute or bind the insured by such unilateral statement made by appellant to its agent.

■ While determining the ultimate issue that a contract between the parties existed, such determination results in the inevitable fact that appellant would have a legal right to sue the insured and/or the deceased's estate for the first year's premium, even though the policy was not accepted by the insured. This we find to be true. The only defense that the insured and/or his legal representatives could have would be that the company's rates, which he left up to them to be charged against him, were capriciously high for when he signed the application and salary deduction order in blank and placed them in the hands of appellant, the law will presume that he expected, after approval of his medical examination, that in determining amount of premium to be paid under policy requested, the company would be reasonable and said premium would be decided by the company in their usual and customary manner of handling such "rated-up" cases; especially is this true since appellant, through the same agent, had been writing group insurance for the assured's company, of which he was president. It is also noted that appellant's agent had in his possession its rate book from which he quoted insured amount of premium per thousand which the company ordinarily charged a person of the age of assured. The law in such cases will construe such contract of insurance most favorable to the insured. Appellant's own witness, H. H. Campbell, assistant secretary and manager of its company, testified that the company considered the policy sued upon was issued in conformity with and based upon the application of George W. Hall.

Appellant's points one, two and three are overruled.

Appellant's points four and five relate to its objection to the trial court's submitting special issues one and two, as follows:

"Special Issue No. (1): Do you find from a preponderance of the evidence that George Hall and the Republic National Life Insurance Company intended said poli-

cy of insurance to become effective immediately, at the time of mailing said policy by the Republic National Life Insurance Company to Burton L. Coder, without any further action on the part of George W. Hall? Answer Yes or No.

"Special Issue No. (2): What sum of money, if any, if paid in cash now do you find from a preponderance of the evidence would constitute a reasonable attorneys' fee in this case? Answer in dollars and cents."

Granting, for the sake of argument, that the content of special issue No. 1 is not supported by sufficient evidence, the trial court nevertheless properly interpreted the written instruments involved in this law suit, which was its prerogative. We overrule appellant's point four.

Appellant duly objected to the submission of special issue No. 2, supra, " * * * for the reason that said issue is irrelevant and immaterial, and the facts conclusively show and establish that the plaintiff has not complied with Article 4736 so as to be entitled to have submitted any issue on any attorneys' fees in this case."

.We find the court erred in overruling appellant's objection and in submitting such issue to the jury. The physical facts show the deceased died on April 10, 1949; that appellee's demand for payment under said policy of insurance was contained in a letter dated April 23, 1949 and appellee filed suit on May 9, 1949.

The courts of this state have repeatedly construed Article 4736 to be a penal statute and an act to invoke said penalty and attorney's fees under such article must be strictly construed. We find the last expression by our Supreme Court in the case of Metropolitan Life Insurance Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 472, 115 A.L.R. 1301, holding the following: "For another reason the award of penalties and attorney's fees cannot be upheld. As a condition precedent to the right to recover same a demand must be made 30 days before the filing of the petition upon which the cause is tried, and that petition must allege the demand. Such demand may be made after the institution of the suit, but must be thereafter set up by an amended petition. The filing of a suit is not a demand within the statute." Citing authorities.

We sustain appellant's point No. 5.

 The judgment of the trial court is reduced in the amount of $2,000.00, being the sum awarded as attorney's fees, and as so reformed said judgment is affirmed.

In view of the disposition made of the appeal, one-half the costs of appeal are taxed against appellant and one-half against appellee.

Judgment reformed, and affirmed as reformed.