WALLINGFORD *et al.*, Respondents, v. HOME MUTUAL FIRE AND MARINE INSURANCE COMPANY, Appellant.

1. In order that a policy of insurance may be binding upon the insurer, it must be accepted by the insured.
2. The charter of a mutual fire insurance company declared that the applicant for insurance "shall, before he receives his policy, deposit his promissory note, &c., a part not exceeding ten per cent. of which shall be immediately paid." The by-laws provide that "policies shall take effect at 12 o'clock, noon, on the day of approval at the office of the company, and shall be binding thereafter, provided the premium or ten per cent. tax on the premium note has been paid," and that "ten per cent. of the premium note shall be paid in all cases and endorsed on the policy." *Held*, that the giving of the note and payment of the prescribed ten per cent. were conditions precedent to the taking effect of a policy.

*Appeal from St. Louis Court of Common Pleas.*

The facts in this case sufficiently appear in the opinion of the court. At the instance of the plaintiffs the court gave the jury the following instruction: "1. If the jury find from

the evidence that the plaintiffs applied to the defendant for insurance on the property and for the sum set forth in the petition, and at the time executed their promissory note in blank to be filled up and retained by defendant for such sum of money as the said defendant should fix as the premium upon the insurance applied for; that the said defendant accepted said application, filled up said note for the premium and retained the same; that said defendant executed its policy in favor of plaintiffs for the sum and on the property described in the petition, and that said policy was sent to defendant's agent at Weston for delivery to plaintiffs; that said policy was received by said agent for a reasonable length of time before the fire, and that plaintiffs, before the fire and after the receipt of said policy by said agent, applied to him for said policy and was willing and ready to pay such portion of said premium or per centage on the premium note as defendant might properly require; that the property mentioned in the petition was destroyed by fire as in said petition alleged, then they will find for plaintiffs in the sum claimed, less ten per cent. on the amount of the premium note."

The court gave the following instructions at the instance of defendant: "2. The plaintiffs are not entitled to recover unless the jury believe from the evidence that plaintiffs accepted and consented to the rate and terms of insurance proposed by defendant before the fire. The acts and declarations of the plaintiffs and of the witness Bird after the fire are not competent evidence in this case and should be disregarded by the jury."

The court, at the request of the jury for further instructions, gave the following: "3. If the application of the plaintiffs for insurance was sent to the defendant by its agent, and at the same time a blank premium note signed by the plaintiffs was sent to be filled up for such sum, or at such rate of insurance, as the defendant should fix; and if the application of the plaintiffs was accepted by the defendant, and the premium note was filled up by the defendant and the policy issued, then the plaintiffs were insured from the time the

note was filled up and the policy issued, although it was not yet delivered to the plaintiffs. 4. By the instructions given at the instance of the defendant it is not intended by the court that the plaintiffs should have accepted the terms of the insurance subsequent to issuing of the policy."

The court refused the instructions asked by the defendant.

*Glover* and *B. A. Hill*, for appellant.

I. The company is a mere creature of the charter and can only act in the mode pointed out. The charter and by-laws made the payment of ten per cent. of the premium note indispensable to the consummation of the contract. The company can not waive such condition. The conditions of the policy must be complied with. The authority of the agent, Bird, were limited to receiving and forwarding applications, delivering policies and receiving the per centage. There is no evidence that any officer of the company in St. Louis had notice through Bird or otherwise that plaintiffs agreed or proposed to take the policy at any rate the company might fix and be bound by such rate, and no notice to or agreement with Bird to that effect could bind the company. There never was any mutual agreement or assent or union of minds upon any rate or terms of insurance. There was error in giving the instruction as asked by plaintiffs, and in giving those given upon the court's own motion.

*Biddlecome*, for respondents.

I. It is not essential to the contract of insurance that a policy shall have been executed and delivered. (29 Maine, 51; 17 Ohio, 192; 9 How. 390.) The company may bind itself by a contract of insurance in the absence of a deposit of a premium note and payment. (20 Ohio, 529; 4 Cow. 645; 2 Curtis, 524; 1 Wash. C. C. 93.) Bird was not authorized by respondents to fill up their application with the rate of nine per cent. or any per cent. The demand for the policy, of which there was abundant testimony for the finding of the jury, the agreement of respondents with Bird to pay the rate fixed by the company, and the readiness of re-

spondents to pay the sum demanded even before delivery of policy, are each and all most conclusive proof of an acceptance of the contract of insurance.

EWING, Judge, delivered the opinion of the court.

This was an action on a policy of insurance. The respondents were doing business in the city of Weston, Mo., in the firm name of Wallingford & Newman. The appellant was a Mutual Insurance Company, holding a charter from this state, and located and doing business in St. Louis.

By the eighth section of the charter it is declared that every person becoming a member of the company by effecting insurance therein shall, before he receives his policy, deposit his promissory note for such sum as shall be determined by the directors; a part, not exceeding ten per cent., of said note shall be immediately paid for the purpose of discharging incidental expenses, &c.; another provision of the charter provides that insurance shall be made on the written application of the assured. The by-laws make it the duty of the president, alone or jointly with any director, to examine all applications for insurance, fix the sum or sums to be taken on each, and the rates of insurance, and approve the same by endorsement on the back of the application; also that " policies of insurance shall take effect at 12 o'clock, noon, on the day of approval at the office of the company, and shall be binding thereafter, *provided* the *premium* or *ten per centage on the premium note has been paid.*" Sec. 8, article 4 of the by-laws further declares that ten per cent. of the premium note shall be paid in all cases and endorsed thereon; one dollar shall be paid to the secretary for each policy, and fifty cents for every assignment or transfer, and one dollar shall be allowed agents for each application taken by them, provided the same is affirmed; and the charter, amendment, by-laws, and conditions of insurance, annexed to the policy, and the application for insurance, are all by express terms made a part of the policy—all which, together with the policy and premium note, were read in evidence on the trial. Be-

sides these, the evidence in the case consisted of the deposition of L. D. Bird, and Salisbury, the secretary of the company. Bird was the local agent of the company at Weston for receiving and forwarding applications for insurance; and to him the respondents made their application for insurance to the amount of twenty-two hundred dollars for six years on the property described in the petition. The application was filled up by Bird at the rate of nine per cent. premium for the six years, and a blank premium note was signed at the same time by respondents and delivered to Bird, who forwarded them to the company at St. Louis. It also appeared from the deposition of Bird that some time after they were sent down, and before the appellant would issue the policy, a resurvey of the property was required, which was made and forwarded; that the application was then acted upon by the president, who approved the risk at the rate of *fifteen per cent.* premium for six years; and on January 20, 1855, a policy was made out, signed and sent to the agent, Bird, with a letter explaining the reasons for fixing the rate so high, and directing that if the insured should think the rate too high, the agent might return the policy without charge; that the agreement between respondents and himself (Bird) at the time application was made, was that the former should take the policy at any rate fixed by the company, and that the rate nine per cent. was set down by him merely to influence the company to fix it at what he thought was a reasonable and fair rate. The policy reached Weston while the agent (Bird) was absent in Nebraska, and on or about March 8, 1855, the property was destroyed by fire. Bird was absent a greater part of the time between the date of the policy and the fire. During this time inquiry was made of him by respondents whether the policy had arrived, but no demand was made for it, and no offer to pay the premium; nor does it appear that the respondents knew before the fire occurred at what rate the premium had been fixed, or that a policy had in fact been made out by the company. It would seem from the testimony of Bird that the policy, having been re-

Wallingford v. Home Mutual Fire & Marine Ins. Co.

ceived in his absence, had been mislaid in his office and lost sight of, and that when inquiry was made of him concerning it by the respondents, he was in doubt whether it had been received at all, or whether he had not delivered it to them, but did not suppose it was actually in his possession until he found it after the fire. It appears from the testimony of both Bird and Salisbury that the former had no authority to fix the rates of insurance, or to accept risks, but only to receive and forward applications. It does not appear that the respondents, at the time of the application, offered to pay any portion of the premium, though Bird says he is not certain that they *did not*, but that he had no power to bind the company by receiving it, and did not do so.

Salisbury, the secretary of the company, exhibits and reads a copy of a letter written by him to Bird, dated January 20, 1855, enclosing policy and giving statement of sum due on it at fifteen per cent., and directing that if the respondents should think the rate too high, he could return the policy without charge. The application was received by the company from their agent (Bird) January 3, 1855. He also states that no premium was ever paid to the office; that the only authority that Bird had for delivering said policy to respondents was the letter alluded to. These are the material facts in the case.

The question we propose to consider in reference to the instructions given and refused is whether, under the state of facts proved, there was any acceptance of the terms of insurance on the part of the respondents; in other words, whether there was a mutual assent of the parties or union of minds to the terms, so as to complete a contract of insurance. Was the acceptance of the policy, the giving of the premium note, and the payment of ten per cent., any or all these, prerequisite to its consummation? It is not pretended that the agent had any authority to make a contract of insurance, to agree upon the rate of premium, or to take risks. No question can arise as to the extent of his power as the company's agent; it was confined to that of receiving applications and

forwarding them to his principal. The application was filled up for insurance at the rate of nine per cent., and may be considered as an application for insurance at that rate, or an offer on the part of respondents to give that much. It is true this sum was inserted in the application by the agent, Bird; but nothing appears to show that appellant knew any thing of the reasons that induced Bird to specify this rate, or that it was not in fact the proposition of the respondents to have insurance effected at that rate. Further information having been obtained respecting the condition and situation of the property, the rate of insurance was fixed at fifteen per cent., and the policy was sent to the agent with instructions that it could not be taken for less; that if the respondents deemed it too high, that he (Bird) could return it without charge.

There was here no assent or union of minds to the terms proposed, but one proposition made which was not accepted, and another and different one submitted by the company, which was not accepted nor even known to have been made before the fire. The case would not have been different if no rate had been specified in the application, (and it was the same thing in effect, for Bird had no authority to agree upon it,) and it had been forwarded to the company. It could scarcely be maintained in such case that the company would have been bound before the terms had been submitted to and accepted by the respondents. Here is an application for insurance, and terms are proposed by the company, which the respondents were at liberty to accept or reject at their option. But it was never acted upon before the loss, and could not have been, because they were not informed of it. It does not appear that the company knew, before the fire occurred, that the respondents proposed to hold themselves bound by any rate of insurance that it might fix; and even if Bird had knowledge of this, the company would not be bound by it.

Although the policy may have reached Bird and been in his possession before the loss happened, it was the same thing as if it had remained in the possession of the company, for

it never passed from the agent, and never had been seen or assented to by the respondents, and there was no delivery of it to them. It was a mere proposition which had not been submitted to, much less assented to, by the respondents, and no act of theirs could convert it into a contract of insurance after the fire occurred, or give it effect as such.

But there is another reason why this policy never took effect, which is that the ten per cent. on the premium note had not been paid. We have seen that the charter declares that the applicant for insurance " shall, before he receives his policy, deposit his promissory note, &c., a part, not exceeding ten per cent. of which, shall be immediately paid." The by-laws provide that " policies shall take effect at 12 o'clock, noon, on the day of approval at the office of the company, and shall be binding thereafter, *provided* the premium or the ten per cent. tax on the premium note has been paid," and " that ten per cent. of the premium note shall be paid in all cases and endorsed on the policy." The evident meaning of this clause of the charter is that the giving of the note and paying the prescribed per cent. are conditions precedent to the taking effect of the policy, and it is so interpreted and carried out in the by-laws which have been quoted ; and any by-law which had not exacted these terms would have been inconsistent with and unauthorized by the charter. The policy, it is true, was approved on 20th of January, and would have been binding from noon of that day if the contract of insurance had been perfected and the money paid ; but having been approved without the assent of the respondents to its terms and the payment of the required sum, the policy was incomplete as a contract of insurance, and remained so by reason of the non-assent of the respondents.

Mr. Phillips, in his work on Insurance, says the execution of a contract of insurance is not distinguishable from that of other written instruments ; that though a policy is a contract between two parties, each of whom is under certain obligations and entitled to demand of the other a compliance with certain implied and expressed conditions and stipula-

tions, it is subscribed only by the insurer himself or by his agent or attorney, and when so subscribed and actually or constructively delivered *unconditionally* to the assured it is a complete and binding contract; and the general rule and usage applicable to contracts of insurance, (irrespective of any special regulations by charter or by-laws,) according to the same author, is that in the usual form of the policy the insurer on a marine risk acknowledges payment of the premium and on fire or life policies of the whole or first annual premium or deposit, or first instalment, and accordingly always imports a settlement, by cash or premium note, of a part or the whole of the premium, simultaneously with the execution and delivery of the policy. This is equivalent to saying that the contract is not in force until such payment has been made. As the company derives its existence and powers from the charter, of course the charter is the law of its being and rule of conduct in the administration of its affairs; and to this, and the by-laws enacted pursuant to it, the company must be restricted in the transaction of its business.

In contracting with such a body it is necessary not only to see that the contract is one within its authority to make and that the person acting as the agent of the company is authorized to bind it, but also that the contract is in the form by which the company, according to its constitution, may be bound. (1 Phillips, § 11.)

A number of cases have been cited by the respondents' counsel, all of which, we think, are distinguishable from the case before us. In Blanchard et al. v. Waite, 28 Maine, 51, the suit was assumpsit on a contract of insurance against a member of a voluntary association of underwriters, for whom the secretary was authorized by a general power of attorney to use the names of all the associates in signing policies of insurance. One of the plaintiffs applied to the president for an insurance on a vessel, of which they (plaintiffs) were sole owners, who, after consultation with the director for the week, agreed to take the risk, and the plaintiff applying

signed the terms on the proposition book. Nothing was said about a premium note, which, under the articles of the association, the secretary was at liberty to take on such time as the directors might determine. When the proposition book was signed the applicant was informed the insurance was complete. It was shown that, according to the prevailing custom there, the insurance offices kept proposition books where the applicants sign the same, and then leave the office considering themselves insured, the contract being regarded as finished at the time of signing the book. It was under this state of facts that it was held that neither the giving the premium note nor the reception of the policy by the insured were prerequisites to the consummation of the contract of insurance, but that it was completed when there was an assent to the terms of it by the parties upon a valuable consideration.

In Taylor v. Merchants' Insurance Company, 9 How. 391, one question was whether, (where there was a correspondence relating to insurance of a house against fire,) the company having made known the terms upon which they were willing to insure, the contract was complete when the insured placed a letter in the post-office accepting the terms. In the instructions of the company to their agent at a distant place, he was advised to transmit all applications for insurance to the office for consideration, and that upon receipt of an answer, if the applicant accepts the terms, the contract is considered complete without waiting to communicate acceptance to the company ; and the policy to be thereafter issued is to bear date from time of the acceptance. The court held that in accordance with the usage of the companies, as well as upon general principles of law governing contracts entered into by absent parties, the contract was complete when the assured placed a letter in the post-office accepting the terms. The claim was also resisted by reason of the nonpayment of the premium note, the actual payment of which, according to the condition annexed to the policy, was necessary to make the insurance binding. The agent was instructed to give no

credit for premiums, but no mode of payment had been pre- scribed by the company, and the agent was at liberty to use a discretion in the matter, and he accordingly directed the insured to pay it in a check payable to his order. The agent, on communicating to the insured the terms received from the company, said to him that if he desired to effect the insurance he could send to the agent his check "and the business would be concluded." The transmission of the check by mail was held a payment of the premium within the terms of the policy, and that in judgment of law it was actually paid at the time the contract became complete.

In the case in 20 Ohio, 527, cited by counsel, the contract of insurance was made with an agent who, it appears, was fully authorized to make a valid contract without the ratification of the company. The case in 4 Cowen, 145, involved the question of the authority or powers of the agent to bind the company in the given case, and is unlike the case at bar in its leading facts. The remaining cases cited, we think, are also inapplicable.

In the view we have taken of the case, we are of opinion that the instructions given at the instance of the respondents, and by the court on its own motion, were erroneous, and that those asked by the appellant should have been given.

We see no error in excluding or admitting evidence. Judgment reversed; the other judges concurring.