## UNITED FIDELITY LIFE INSURANCE COMPANY V.
### MRS. IDA C. HANDLEY.

No. 6419.   Decided October 9, 1935.
Rehearing overruled October 30, 1935.
(86 S. W., 2d Series, 201.)

*Leake, Henry & Young,* of Dallas, for plaintiff in error.

Where the application for insurance expressly stipulates that it shall not become effective until the policy is delivered to the applicant during his lifetime the insurance cannot become effective unless the policy is delivered to the insured in his lifetime.   1 Cooley's Briefs on Insurance (2d Ed.), p. 630; Wright v. Federal Life Ins. Co. (Com. App.), 248 S. W., 325; Great So. Life Ins. Co. v. Dolan (Comm. App.), 262 S. W., 475; National Aid Life Ass'n. v. Miller, 43 S. W. (2d) 623; 37 C. J., 400; 14 R. C. L., 898.

The receiving by an insurance company of the check of its agent for the net premium on an application for insurance, which check was not cashed or retained by the company an unreasonable length of time or any length of time prior to the death of the applicant and no showing made that it was customary for the insurance company to accept checks as payment of premiums, there was no payment of the premium to the insurance company shown. Texas Mut. Life Ins. Co. v. Davidge, 51 Texas, 244; 1 Cooley's Briefs on Ins., 700; 48 C. J., 617; Waggoner Bank & Tr. Co. v. Gamer Co., 113 Texas, 5, 213 S. W., 927.

*C. H. Cain,* of Tahoka, and *Bean & Klett,* of Lubbock, for defendant in error.

The check having been received and impliedly accepted in payment of the premium, the insurance company by its conduct waived the manner and form of remittance. State Life Ins. Co. v. Nolan, 36 S. W. (2d) 767; Tayloe v. Merchants Fire Ins. Co., 9 How. (U. S.) 390, 13 L. Ed., 187; 48 C. J., 619, sec. 51; 21 R. C. L., 65, sec. 63; Liberty Life Ins. Co. v. Moore, 10 S. W. (2d) 178; Reppond v. National Life Ins. Co., 100 Texas, 519, 101 S. W., 786; Pacific Mutual Life Ins. Co. v. Barton, 50 Fed. (2d) 362.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Defendant in error, Mrs. Ida C. Handley, sued plaintiff in error, United Fidelity Life Insurance Company, to recover under an insurance policy on the life of her husband, M. L. Handley. She obtained a recovery in the district court and the judgment was affirmed by the Court of Civil Appeals. 53 S. W. (2d) 833. The only question for decision here is whether or not there was actually a contract of insurance upon the life of M. L. Handley at the time of his death. There is no dispute as to the material facts. They are substantially as follows:

On August 12, 1931, M. L. Handley signed application for insurance in the sum of $2500.00 and the further sum of $2500.00 in case of accidental death. He lived at Tahoka, Texas, and the application was mailed by the local agent at Tahoka to the office of the Insurance Company at Dallas. On August 26, 1931, the Company wrote the agent at Tahoka that a complete medical examination of the applicant would be necessary before it could go further with the application. Nothing appears to have been done in this regard. On Sep-

tember 26, 1931, the Company wrote the local agent as follows:

"As you have been previously advised, our Risk Committee did not consider Major Lee Handley a standard life insurance risk. We have, however, been able to secure full coverage reinsurance with one of our most liberal reinsurance connections with an extra premium of $10.00 per thousand for the first year, or total extra premium of $25.00 for the first year on the $2,500.00 of insurance applied for, and we can issue our policy by allowing you 75% commission on the life premium, the usual commission on the double indemnity premium, 25% commission on the initial term premium, and no commission on the extra premium, cash nets required.

"The nets on the above basis amount to $49.69, arrived at as follows:—

| | | |
|---|---|---|
| "Life Premium: | $71.68 | |
| "Net 25%: | | $17.92 |
| "Double Indemnity Premium: | 4.38 | |
| "Net 55%: | | 2.40 |
| "Extra premium—no commission | | 25.00 |
| "Initial term premium: | 5.83 | |
| "Net 75%: | . | 4.37 |
| "Total nets: | | $49.69 |

"Kindly ascertain if the policy can be delivered on the above basis and, if so, let us have remittance to cover the nets."

Upon receipt of this letter by the agent he took the matter up with Handley and Handley agreed to accept a policy upon the terms and conditions set out in said letter. Arrangements were made between Handley and the agent as to payment of the premium, and on September 29, 1931, the agent wrote the Company as follows:

"Mr. Handley has consented to take this policy, provided the extra rate of $10.00 per 1000. is for only one year. He also does not think that you should charge him for the initial term premium as the time under the initial term has practically arrived and he has had no protection. He thinks that you should change the date of his application and let the premiums mature annually from this date. I told him that I would take this up with you but could not promise him what action you would take.

"I am enclosing check for $49.69 to cover the nets on $2,500.00. Do not issue extra policy as I can not deliver it under the extra rate."

It is agreed that this letter with the personal check of the agent in favor of the Company for $49.69 reached Dallas sometime during the day of September 30, 1931. Handley was accidentally killed about 3 or 3:30 o'clock of that day. The Company received information of his death from newspapers, either late in the afternoon of September 30th or on October 1st. Before receiving notice of Handley's death and during the day of September 30, the Company filled out, signed and had ready for forwarding to the agent a policy in conformity with the original application as amended by the proposal of the Company in the letter of September 26th, which proposal had been accepted by Handley. Although this policy was ready to be mailed to the local agent, it was not sent out because the Company received notice of the death of Handley. At the time of preparing the policy the Company also prepared an amended application which was to be forwarded to the agent along with the policy for the signature of Handley. A receipt was also prepared for his signature. The amended application is as follows:

"I, Major Lee Handley, who applied to the United Fidelity Life Insurance Company, Dallas, Texas, on the 30th day of September, 1931, for an ordinary life endowment at age 85 policy in the amount of $2,500.00 hereby agree to accept policy No. 46577 issued on the basis of my application with the definite and distinct understanding that its first year premium under said policy is to be $101.06 and that each succeeding renewal premium under said policy will be $76.06, which is the premium stated in the policy contract.

"This agreement is to be considered as an amendment both to my application and to the policy contract."

On October 6, 1931, the Insurance Company wrote the local agent as follows:

"We have received your check for $49.69 tendered as nets in connection with application for a policy on the life of Major Lee Handley, but before the application could be completed and the policy delivered we learned of his accidental death. Inasmuch as the transaction was not completed and no insurance in force, we are returning herein the above described check for cancellation by you."

The original application by Handley contained the following stipulations:

"I agree on behalf of myself and any person or persons, firm or corporation, who may have or claim any interest in any insurance issued on this application as follows: (a) that if the first premium for the insurance hereby applied for be not paid to the agent at the time of making this application, or if only a part of such premium be paid as aforesaid, or if the policy be issued for a less amount or on any other plan than that for which this application is made, the insurance shall not be effective until the policy is delivered to and accepted by me, and the first premium thereon actually paid during my lifetime and continued good health, but upon such delivery, acceptance and payment, during my lifetime and continued good health the policy shall be deemed to have taken effect from and shall bear the date of this application or other date specifically requested by the applicant, on which date in each year thereafter subsequent premiums will be due and payable. (b) If the first premium is paid when my application is taken and a policy issued as originally applied for, the insurance shall be effective as soon as my application is approved by the company."

The plaintiff in error contends that this case falls within the terms of subdivision (a) above, and that there was no insurance in force and effect because no policy had been delivered to Handley and accepted by him before his death. We do not think this case is controlled by the terms of subdivision (a) above. We believe the facts make applicable the provisions of subdivision (b), and that there was a valid contract of insurance between the parties.

The original application provided for "initial term" insurance, by which was meant insurance dating from the time the application was approved to the date of the delivery of the policy. It will be observed that in the letter of September 26th to the local agent the "initial term premium" is stated to be $5.83, and the net thereof as $4.37. This last sum was included in the check which the agent sent to the Company covering "nets." It will be observed further that while the original application was not approved and accepted, nevertheless it was retained by the Company. The letter of September 26th sets forth the additional considerations and conditions upon which "we can issue our policy," and contains a statement which in effect is an invitation to Handley to renew his application upon the terms as set forth in the letter. The language is this: "Kindly ascertain if the policy can be delivered on the above basis, and if so, let us have re-

mittance to cover the nets." On the 29th the agent replied, stating that Mr. Handley had consented to take the policy, and the agent forwarded check for the "nets" in exact accordance with the letter of September 26th. Thus it is seen that there was an acceptance by Handley of the conditions as well as the offer to deliver the policy. While he made certain suggestions, they were not in the way of qualifications or conditions, and even if they were, the Company appears to have raised no objection, but complied with them.

The action of the Company in preparing the policy, the supplemental application and the receipt is conclusive evidence that it approved the application and also accepted the check of the Company's agent covering "nets" before being advised of the death of Handley. While there is a statement of one of the witnesses that he learned of the accident on the day it happened, yet it is admitted that he learned of it from the Dallas newspapers, and as Handley was not killed until about 3 or 3:30 o'clock in the afternoon it is evident that it must have been late in the day before knowledge of the death was obtained from the press. The amended application prepared by the Company shows conclusively that the Company acted upon the theory that Handley had renewed his application or had in effect made a new application. The instrument prepared for his signature contained this language: "I, Major Lee Handley, who applied to the United Fidelity Life Insurance Company, Dallas, Texas, *on the 30th day of September, 1931,* for an ordinary life endowment," etc. It will be noted that subdivision (b) quoted above provided that "If the first premium is paid when my application is taken * * the insurance shall be effective as soon as my application is approved by the Company." We think this is exactly what happened in this instance. It is true that there is the further contention "and a policy issued as originally applied for," but there is no requirement that such policy shall be delivered. In fact, it is clear that this provision relates to "initial term insurance," which manifestly was intended to be effective before delivery of the policy. While it is not clear whether the policy which was issued on September 30th was exactly like the policy originally applied for on August 12th, we do not think this is material. The Company unquestionably treated the transaction evidenced by the letters of September 26th and September 29th as constituting a new application or a renewal of the old application, and we think it but reasonable

to say that the policy was issued "as originally applied for" as the result of these new proceedings.

The further contention is made that the evidence fails to show that there was a payment of the first premium. We cannot agree with this contention. It will be noted that in the letter of September 26th to the local agent it was said: "Let us have remittance to cover the nets." From this it appears conclusively that the Company was not concerned about how the applicant made payment to the agent but was looking to the agent to remit the nets; that is, the amount of premium after deducting the agent's commission. It is not disputed that Handley made an arrangement with the local agent that was satisfactory, and that the agent remitted his personal check for the nets. In view of the fact that the check was received with the letter and the Company immediately prepared the policy, amended application and the receipt, and made preparations to mail them to the agent, and in view of the further fact that the check was not returned until October 6th and then solely for the reason (as contended by the Company) that the transaction had not been completed and no insurance was in force, shows convincingly that the check was accepted as a suffcient payment of the net premiums. The trial court so found.

We think from the foregoing that it was clearly shown that the first premium was paid when the application was taken, that it was accepted, the application approved, and that the policy was issued; therefore, under the terms of subdivision (b) above quoted the insurance was in effect prior to the death of Handley, even though the policy was not delivered.

We are in full accord with the Court of Civil Appeals in the holding that there was no error in refusing to put the case on the jury docket. The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by Supreme Court October 9, 1935.

Rehearing overruled October 30, 1935.