Vernon A. WRIGHT, Appellant,

v.

Robert L. McKINZIE and Charles McKinzie, d/b/a Harley-Davidson Sales, Appellees.

No. 13134.

Court of Civil Appeals of Texas.

San Antonio.

April 17, 1957.

Rehearing Denied May 15, 1957.

Nye & Cohn, Bernard W. Schrader, Corpus Christi, for appellant.

R. Briscoe King, Corpus Christi, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Robert L. McKinzie and Charles McKinzie, a co-partnership doing business under the firm name and style of Harley-Davidson Sales, against Vernon A. Wright, seeking judgment upon a certain promissory note, dated April 23, 1955, in the principal sum of $233.90, payable to "Harley-Davidson Sales" in twelve equal monthly installments of $19.41 and signed by Vernon A. Wright, and further for a foreclosure of a chattel mortgage lien upon a 1952 Mustang Motor Scooter; such lien being provided for in a chattel mortgage of even date with said note and also being signed by defendant. The above lien was likewise shown in the certificate of title of the Motor Scooter.

The cause was submitted to a jury upon two special issues which were answered favorably to defendant, but the trial court granted plaintiffs' motion for judgment non obstante veredicto and rendered judgment in their favor against defendant in the sum of $257.29, and for foreclosure of the chattel mortgage lien on the Motor Scooter. The judgment denied defendant any recovery upon his cross-action, and he has prosecuted this appeal.

Appellant's first point is that the court erred in denying defendant's motion for an instructed verdict, because it affirmatively appears that no contract was entered into between the parties. The evidence shows that Gene Wright, appellant's minor brother, on April 20, 1955, went to appellees' place of business for the purpose of buying a motor scooter. Gene talked to

Mrs. Helen McKinzie, wife of one of appellees, and was given the price of $200 for the motor scooter here involved. Gene asked if he could try it out and was told "that the machine couldn't be moved or even cranked up, that it had to be fully insured before it could be moved." Gene decided he would like to purchase the scooter and was told the cost price would be $200, plus about $65 carrying charge. Gene asked what type of insurance she was going to give him, and if it would have fire insurance on it, and she replied, "it would be fully insured." Gene paid $35 down on the scooter and Mrs. McKinzie gave him some blank instruments and told him to have his father sign them. Gene told her that his father was not living and asked if his brother, who was twenty-one years old, could sign, and she said that it would be all right and gave Gene the blank forms to be signed by his brother, Vernon A. Wright, who is the appellant.

Gene took these blank forms home and asked his brother to sign them. Appellant tried to talk Gene out of buying the scooter but ultimately signed the papers in blank. Gene took them back to appellees' shop, where the blanks were filled in over the signature of appellant. The scooter was turned over to Gene and he took it home. About a week later it caught on fire when he tried to start it, and the scooter was greatly damaged. Appellant took the damaged scooter to appellees' shop and asked to see the insurance policy. He learned there was no fire insurance and tried to get appellees to cancel the transaction and return the $35, but this was refused. Gene had told appellant that there would be fire insurance on the scooter. Appellant knew that appellees had filled in the blanks in the instruments and had turned the scooter over to Gene. He also knew the amount of the monthly installment payments and that there were twelve of them. He made no effort to cancel the deal until after the scooter caught on fire.

Appellant readily acknowledges that under the provisions of Sec. 14, Art. 5932, Vernon's Ann.Civ.Stats., appellees had a right to fill in the blank spaces in the instrument, in accordance with any agreement that existed between him and appellees, but he contends that there never was an understanding as to the exact amount to be filled in. We cannot agree. Appellant knew at the time he signed the blank forms that the price of the scooter was $200, and that there would be a carrying charge of about $65. The carrying charge filled in amounted to $68.90. Appellant in effect knew what this amount was before the scooter burned, because he knew the amount of each of the twelve monthly installments Gene had agreed to pay. He made no complaint until after the scooter burned. He further knew that appellees had accepted these instruments and delivered the scooter to Gene, and if appellant was dissatisfied he should have made that fact known at once. He said he let the matter go because he did not want to go through all the red tape that would be required to cancel the deal. Appellant will not now be heard to complain after the scooter has been greatly damaged by fire.

Appellant cites Clem Lumber Company v. Barnett, Tex.Civ.App., 158 S.W.2d 837, where a payee inserted in a note a provision for 8% interest when there was no agreement to pay interest at any rate, and the signer of the note had done nothing to ratify such alteration or addition to the provisions of the note. Here there was an understanding that there would be a carrying charge of about $65, and appellant, after he knew what the payments were to be, registered no complaints as to the amount, and permitted his brother Gene to retain the scooter. The two situations are distinguishable.

Appellant also cites Republic National Life Insurance Co. v. Hall, 149 Tex. 297, 232 S.W.2d 697, in which case Hall made an application for a large sum of life insur-

ance. He was informed as to about what the premium would be, but he did not know the exact amount. The amount was later filled in at the office of the insurance company, but Hall was killed before he was notified of the amount of the premium. The court held there was no contract, but in the case at bar appellant did know the amount of the carrying charge, because he knew the amount of each of the twelve monthly installments.

Appellant next contends that the court erred in not entering judgment for appellant based upon the verdict of the jury. The jury, in answer to the two special issues submitted to it, found as follows:

1. That Helen McKinzie represented to Gene Wright that the motor scooter was to be fully covered by insurance, and

2. That Gene Wright relied upon such representation.

The jury was not called upon to find when the insurance was to be taken out, who was to take it out, and who was to pay the premium on such insurance. Neither was the jury asked whether appellant, Vernon A. Wright, relied upon the representation made by Helen McKinzie.

The chattel mortgage executed by Vernon A. Wright provided as follows:

"Said Mortgagor further covenants and agrees to keep said goods and chattels insured against loss or damage by fire and theft; loss, if any, payable to said Mortgagee as said Mortgagee's interest may appear, delivering policy to Mortgagee. And in case said Mortgagor shall neglect or refuse to obtain said insurance or pay such taxes as aforesaid, than said Mortgagee may at said Mortgagee's option, obtain such insurance and pay all such taxes and assessments aforesaid; and all sums of money thus expended are hereby secured by these presents and shall be payable with interest upon demand from said Mortgagor to said Mortgagee, and may be retained by said Mortgagee from the proceeds of the sale of said goods and chattels herein authorized."

■ The effect of this provision was to place the burden of insuring the scooter against loss by fire on appellant, at his own expense, and appellant cannot vary or contradict the terms of this written obligation by oral evidence. Appellant could not cancel the sale of the scooter for the failure of appellees to do something that he himself had contracted in writing to do.

■ If appellant had any cause of action for fraud or damages, he waived it by not requesting that such matters be submitted to the jury. Rule 279, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.