**GREAT AMERICAN RESERVE INSUR-
ANCE COMPANY, Appellant,**

**v.**

**SAN ANTONIO PLUMBING SUPPLY
COMPANY, Appellee.**

No. 14232.

Court of Civil Appeals of Texas.

San Antonio.

March 11, 1964.

Rehearing Denied April 8, 1964.

LeLaurin, Chamberlin, Guenther & Murry, Bettie J. Stock, San Antonio, for appellant.

Brundidge, Fountain, Elliott & Churchill, Dallas, for appellee.

MURRAY, Chief Justice.

This suit was instituted by appellee, San Antonio Plumbing Supply Company, against appellant, Great American Reserve Insurance Company, seeking to recover upon a policy of life insurance issued upon the life of Sul Ross in the principal sum of $10,000.00. Appellant contends that the policy was never in effect. Both parties moved for summary judgment. The trial court overruled the motion of appellant and granted that of appellee, and then proceeded to render judgment against appellant in favor of appellee in the sum of $10,000.00, together with penalty, attorney's fees and interest; from which judgment the Great American Reserve Insurance Company has prosecuted this appeal.

In November, 1961, Sul Ross, Andrew Carl Tomlin, William August Stoeltje, and

Martin F. Reinhard were officers of and stockholders in appellee company, and decided to take insurance on their lives for the benefit of the company. They contacted Darrell Barnes, who at the time was a soliciting agent for appellant, and each gave him his signed application for $10,-000.00 of insurance. In each application it was stated as follows:

"(2) That the policy hereby applied for shall not take effect unless the insured is alive at the time of its delivery to the insured provided that if this application is approved by the company and policy issued as applied for, and provided the first premium has been paid, the insurance applied for herein shall be effective from the date of this application, or the date of the medical examination of (sic) such examination is required, and, provided further, that in no event, shall the insurance applied for herein take effect unless the insured is in sound health at the time of the making of this application."

Appellant required that Sul Ross take a physical examination, and it was discovered that he had high blood pressure and an excess of sugar in his urine. Ross was required to take another physical examination and to furnish a written report as to his health from his personal physician, and from this information appellant "rated up" the policy of life insurance being issued on the life of Sul Ross. There is no difficulty about the other three policies, this suit is based alone upon the Sul Ross policy. Appellant's principal office was in Dallas, with a branch office in San Antonio. The four policies were prepared in the Dallas office and sent to the San Antonio office, with instructions to have each insured sign a declaration of no change in health. The policies were received on January 19, 1962, but nothing was done about them that day. On January 20, 1962, Sul Ross was taken sick and sent to the hospital. This information reached the San Antonio office on the same day.

Joe Roger Davenport was the San Antonio Branch Manager, and Kenneth Stewart Wingfield was Unit Manager. Darrell Barnes was no longer a soliciting agent; he had become a broker. When Barnes heard of Sul Ross' hospitalization he called Wingfield and asked what should be done. Wingfield advised Barnes "to get a check." In this connection, Wingfield testified as follows:

"Q All right. Did you ever tell Darrell Barnes to go out there and get a check?

"A Yes, I told him to.

"Q What were your words that you used in telling him this? Again, if you don't remember specifically, just tell us generally what you said to him.

"A Okay. Generally, my words were 'I wish to heck we could have done this yesterday when the policies came in, rather than today, then the situation wouldn't exist. Go out and get a check and if Mr. Ross is actually in the hospital, of course, you can't let him sign the affidavit because he is not in good health, if he is in the hospital. We have got to hold the policy for instructions after he does get well and then we can go through the underwriting over again. Definitely get a check on these other fellows if they will give it to you and get their declaration signed.' By declaration, I am using this word for—we call our declaration of no change in health and so forth."

Barnes went to appellee's office and there received a check payable to appellant in the sum of $222.90, being the total amount required to cover the premiums on the four policies. The normal premium for Ross would have been $61.50 per month, but due to his high blood pressure and excessive sugar in his urine his premium was $113.-80.

Appellant's point of error is:

"The Sul Ross application dated December 5, 1961, transmitted without any statement of premium and with a medical report showing high blood pressure and sugar in the urine was no more than an invitation for an offer. The Company responded with an offer to insure at a rate of $113.80, instead of a standard rate of $61.50, provided said Insured's health at the time of delivery had not deteriorated since December 5, 1961, and he was able to sign a declaration to that effect. When the policy was otherwise ready for delivery on January 20, 1962, Sul Ross was in the hospital suffering from a brain stem hemorrhage from which he died on January 31, 1962. He was, therefore, physically unable to comply with the Company's offer of insurance, did not do so, the policy was not delivered and no contract of insurance became effective."

■ It occurs to us that, if on January 20, 1962, after the policies arrived at appellant's San Antonio office and the amount of the first monthly premium was known, and with full knowledge that Sul Ross was in the hospital, Wingfield, appellant's Unit Manager, told Darrell Barnes to go out to appellee's office and get a check for the premiums, and Barnes did so and accepted the check as payment of the first month's premium, without conditioning such acceptance in any way, such payment would be sufficient, under all of the circumstances, to put the insurance into effect then and there.

It is true that the instructions from the Dallas office to the San Antonio office were not only to collect the premiums, but also to have each of the four persons on whose lives the policies were issued, sign a statement to the effect that his health at the time of the delivery had not deteriorated since December 5, 1961. Barnes got a signed statement from Stoeltje, Tomlin and Rein-hard, but not from Sul Ross, because he was in the hospital.

The appellant's instruction to have each insured sign such a statement was not a provision of the application each had signed, nor of the policy that was issued, it was in the nature of a secret instruction by appellant to its agents. Unless these secret instructions were made known to the officers of appellee they would not be binding in any way upon appellee who was the owner of the policies, the beneficiary in the policies and the one to pay the premiums.

The statements Barnes made to Reinhard tend to establish the fact that this information was passed on to Reinhard, and they might be sufficient to show that Reinhard was informed that the policy on the life of Sul Ross was not to go into effect, but this evidence at most did nothing more than raise an issue of fact as to whether Barnes accepted the payment of the Sul Ross premium conditionally. The check was sent on to the Dallas office and cashed by the authorities there, but after the death of Sul Ross a check was sent to appellee returning the amount of the Sul Ross premium.

■ The trial court erred in granting appellee's motion for a summary judgment because, under the evidence, there is a disputed fact issue as to whether the check was received as payment of the premium, or only conditionally, depending upon Sul Ross' being able to sign the statement. For the same reason the trial court did not err in overruling appellant's motion for a summary judgment on its behalf.

■ Before appellee would be entitled to a summary judgment in its favor, the burden was upon it to show that there was no genuine issue as to any material fact. This appellee did not do and therefore was not entitled to a summary judgment. Rule 166–A, Texas Rules of Civil Procedure. Futch v. Greer, Tex.Civ.App., 352 S.W.2d 896; Tigner v. First Nat. Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85; Crooks v.

144

Aero Mayflower Transit Co., Tex.Civ.App., 363 S.W.2d 191.

■ All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment, and the party opposing the motion is entitled to the benefit of every reasonable inference which can properly be drawn in his favor. Hersh v. H. E. Butt Grocery Company, Tex.Civ.App., 338 S.W. 2d 174.

Appellant relies on the case of Republic National Life Ins. Co. v. Hall, 149 Tex. 297, 232 S.W.2d 697, but that case is not in point here. There the amount of the premium was never made known to the insured, and of course was never paid conditionally or otherwise.

Accordingly, the judgment of the trial court is reversed and the cause remanded for a trial on the merits.