**CONTINENTAL CASUALTY CO., Appellant,**

v.

**FINA OIL & CHEMICAL CO., Appellee.**

**Fina Oil & Chemical Co., Appellant,**

v.

**Continental Casualty Co., Appellee.**

No. 01–02–00449–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 26, 2003.

Rehearing Overruled Jan. 15, 2004.

Jane A. McClaine, Drucker, Rutledge, Ward & Smith, L.L.P., Spring, Richard C. Rutledge, Drucker, Rutledge, Ward & Smith, L.L.P., Woodlands, for appellant.

Christopher A. Prine, George W. Lederer Jr., Vance Christopher, Crain, Caton & James, Houston, for appellee.

Panel consists of Justices HEDGES, NUCHIA, and KEYES.

## OPINION

SAM NUCHIA, Justice.

Continental Casualty Company (Continental) appeals the trial court's judgment declaring that Fina Oil & Chemical Company (Fina) was an additional insured under a commercial general liability insurance policy issued by Continental to A & B Builders, Inc. (A & B) and awarding damages to Fina for its claim of breach of contract. Continental specifically argues that (1) Fina was not an additional insured and (2) if Fina was an additional insured, coverage was excluded for Fina's claims. Fina appeals the trial court's determination that Continental did not waive its right to subrogation. We reverse the judgment and render judgment that Fina take nothing.

## BACKGROUND

On August 12, 1997, A & B wrote a letter to Fina proposing to perform steel erection for three buildings. The letter stated,

A & B Builders, Inc. is pleased to offer our proposal to furnish labor, tools, material (not furnished by Fina), equipment, insurance and supervision to complete steel erection for the above referenced buildings. . . .

. . . .

We appreciate the *opportunity* to quote this work to Fina Oil & Chemical and look forward to hearing from you in the near future. If you have any questions or require additional information, please feel free to contact our office.

On that same date, Fina issued two purchase requisitions that, together, comprised the work proposed by A & B in its quote.

On August 18, A & B's insurance agent issued a certificate of insurance showing A & B as the insured and Fina as the certificate holder. The certificate contained the following disclaimer: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." Under the heading, "Additional Insured," the certificate provided:

FINA, its parent, subsidiaries and affiliated companies, and their respective employees, officers and agents shall be named as additional insured in each of Contractor's policies, except Workers' Compensation; however, such extention [*sic*] of coverage shall not apply with respect to any obligations for which FINA has specifically agreed to indemnify Contractor.

The certificate also provided, under the heading, "Subrogation":

All policies shall be endorsed to provide that underwriters and insurance companies of Contractor shall not have any right of subrogation against FINA, its parent, subsidiaries and affiliated companies, and their respective agents, employees, officers, invitees, servants, contractors, subcontractors, underwriters and insurance companies.

The Additional Insured Endorsement provided:

IF YOU ARE REQUIRED TO ADD ANOTHER PERSON OR ORGANIZATION AS AN ADDITIONAL INSURED ON THIS POLICY UNDER A WRITTEN CONTRACT OR AGREEMENT CURRENTLY IN EFFECT, OR BECOMING EFFECTIVE DURING THE TERM OF THE POLICY, AND A CERTIFICATE OF INSURANCE HAS BEEN ISSUED, THEN WHO IS AN INSURED (SECTION II) IS AMENDED TO INCLUDE AS AN INSURED THAT PERSON, OR ORGANIZATION (CALLED "ADDITIONAL INSURED")[.]

THE INSURANCE FOR THAT ADDITIONAL INSURED IS LIMITED AS FOLLOWS:

1. THAT PERSON, OR ORGANIZATION, IS ONLY AN ADDITIONAL INSURED FOR ITS LIABILITY ARISING OUT OF PREMISES "YOU" OWN, RENT, LEASE OR OCCUPY OR FOR "YOUR WORK" FOR OR ON BEHALF OF THE ADDITIONAL INSURED; AND

2. THE INSURANCE AFFORDED THE ADDITIONAL INSURED UNDER THIS ENDORSEMENT DOES NOT APPLY TO (a) PUNITIVE OR EXEMPLARY DAMAGES IN WHATEVER FORM ASSESSED AGAINST THE ADDITIONAL INSURED AND/OR (b) ANY LIABILITY ARISING

OUT OF ANY ACT, ERROR OR OMISSION OF THE ADDITIONAL INSURED, OR ANY OF ITS EMPLOYEES.

. . . .

The policy also contained the following endorsement providing for the waiver of transfer rights of recovery against others:

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

NAME OF PERSON OR ORGANIZATION: "ANY PERSON OR ORGANIZATION WITH WHOM YOU AGREE IN WRITING TO WAIVE YOUR RIGHT TO RECOVER AGAINST THEM. YOU MUST AGREE TO THIS WAIVER PRIOR TO THE DATE OF THE LOSS."

. . . .

WE WAIVE ANY RIGHT OF RECOVERY WE MAY HAVE AGAINST THE PERSON OR ORGANIZATION SHOWN IN THE SCHEDULE BECAUSE OF PAYMENTS WE MAKE FOR INJURY OR DAMAGE ARISING OUT OF "YOUR WORK" DONE UNDER A CONTRACT WITH THAT PERSON OR ORGANIZATION. THE WAIVER APPLIES ONLY TO THE PERSON OR ORGANIZATION SHOWN IN THE SCHEDULE.

On August 22 and 25, Fina issued two purchase orders, showing A & B as the vendor, for the proposed work. The reverse side of the purchase orders contained terms and conditions of the sale. These terms and conditions made no reference to the provision of insurance by the seller to the buyer.

On August 14, 1997, Larry Wisdom, an employee of A & B, was injured when a load of steel beams, which was being unloaded on the Fina work site, fell. Wisdom sued Fina and two other corporations who were involved in the work, alleging negligence. Specifically, Wisdom alleged that Fina was negligent in (1) failing to supervise properly, (2) issuing a permit to unload unbanded steel with a forklift, (3) failing to supply a cherry picker for unloading the unbanded steel, (4) rushing the unloading process, (5) failing to supply a safe workplace, and (6) allowing an unsafe activity on its premises. Wisdom did not sue A & B, his employer, through whom he was receiving worker's compensation benefits.

A & B was insured by Continental under several policies, including worker's compensation insurance and commercial general liability insurance. As the insurer, Continental paid medical expenses and wage benefits to Wisdom. In August 1999, after learning of Wisdom's lawsuit, Continental filed a petition in intervention, asserting a lien in the amount of $107,979.04 on the first monies paid to Wisdom, stating that Wisdom continued to receive medical treatment and wage benefits, and seeking judgment of at least $107,979.04. Four days later, counsel for Fina sent a letter to A & B, with a copy to Continental, demanding a defense and indemnity under the terms of the certificate of insurance. On September 16, 1999, Fina sent a letter by fax to Continental, with a copy to A & B, reiterating Fina's demand for a defense and indemnity.

Fina filed a counterclaim to Continental's petition in intervention, alleging that Fina was an additional insured under A & B's insurance policies and asserting that Continental had breached its duties under the policies by refusing to defend and indemnify Fina and by seeking to enforce a

lien against Fina for benefits paid to Wisdom. Continental generally denied Fina's allegations. Both parties filed motions for summary judgment. Continental contended that Fina was not an additional insured under A & B's insurance policies and that Continental did not waive its subrogation rights. Fina argued that it was an additional insured and was entitled to a defense and indemnification and that Continental waived its subrogation rights. The trial court granted both motions in part, declaring that Fina was an additional insured under the policy on the date of Wisdom's accident and that Continental did not waive its subrogation rights. Meanwhile, Fina and the two other defendants in the underlying lawsuit settled with Wisdom. Fina paid $115,000, and the other defendants paid a total of $122,500.

After the trial court granted the partial summary judgments, the court granted Continental's unopposed motion to sever the breach-of-contract issues from the rest of the case. The issue of attorney's fees relating to the breach-of-contract issues was tried to the court. The parties stipulated that Fina's costs of defense, in the amount of $56,484.75, relating to Wisdom's cause of action were reasonable and necessary. The trial court awarded Fina $166,269.44 as attorney's fees and expenses for the trial of the breach-of-contract claim, $115,000 for settlement of Wisdom's claim, and $56,484.75 for costs of defense of Wisdom's claim. The total award to Fina against Continental, including prejudgment interest, was $365,751.61.

## DISCUSSION

### I. Standard of Review

■ Insurance policies are controlled by rules of interpretation and construction applicable to contracts generally. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Id.* Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning. *W. Reserve Life Ins. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953). If a written contract is so worded that it can be given a definite or certain legal meaning, it is not ambiguous. *Nat'l Union Fire,* 907 S.W.2d at 520. The interpretation of an unambiguous contract is a question of law for the court. *Perry v. Houston Indep. Sch. Dist.,* 902 S.W.2d 544, 547 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.). If an insurance policy is ambiguous, however, it will be interpreted in favor of the insured. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997).

### II. Continental's Appeal

#### A. Additional Insured

■ In its first issue, Continental contends that Fina was not an additional insured as defined by the additional-insured endorsement because there was no written contract or agreement requiring A & B to add Fina as an additional insured. Fina responds that its written bid dated August 12, 1997, which proposed to "furnish ... insurance," became the written contract when it was accepted by Fina. Fina argues that a written bid that is orally accepted and acted upon constitutes an agreement in writing and that, when a contract has been reduced to writing, is signed by one of the parties, and is ratified and accepted by both parties, it is treated as a written instrument that is binding on both parties. Fina cites *J.H. Beall v. Hardwicke–Etter Co.,* 460 S.W.2d 516 (Tex.Civ.App.-Waco 1970, writ dism'd w.o.j.), *Taylor Construc-*

*tion Co. v. Clynch,* 196 S.W.2d 700 (Tex. Civ.App.-Amarillo 1946, no writ), and *Salisbury v. Taylor,* 5 S.W.2d 874 (Tex.Civ. App.-Austin 1928, no writ) to support this argument.

We do not disagree with Fina's statement of the law; however, that principle does not apply to the present case. As between Fina and A & B, the parties could form a written contract, a parol contract, or a combination of the two. The issue in this case is not merely whether there was a contract between Fina and A & B, but whether that contract complied with the contract of insurance between A & B and Continental.

■■ To be legally binding, a contract must be sufficiently definite in its terms so that a court can understand the parties' obligations. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992). The parties must agree upon the material terms of the contract for it to be enforceable. *Id.* In the present case, a bid to "furnish ... insurance," with nothing more, cannot be said to embody the material terms of a contract to provide that insurance.

The additional-insured endorsement conditioned the amendment of A & B's policy regarding who was an insured on (1) a requirement under a written contract to add another person or organization as an additional insured and (2) the issuance of a certificate of insurance listing that person or organization as an additional insured. It may be true, as argued by Fina, that both Fina and A & B understood that Fina would become an additional insured under A & B's policy and that A & B requested the issuance of a certificate of insurance on August 12. However, neither A & B's proposal nor Fina's purchase requisitions or purchase orders specifically require adding Fina as an additional insured,[1] and the certificate of insurance was not issued until August 18, 1997. Accordingly, we hold that Fina was not an additional insured under A & B's policy on August 14, 1997, the date of Wisdom's injury.

We sustain Continental's first issue.

### B. Exclusions

■ In its second issue, Continental contends that, even if Fina was an additional insured on August 14, 1997, coverage for Wisdom's injury was excluded under the policy's exclusionary language. Continental argues that the first of two limitations paragraphs extended coverage to Fina for liability arising out of premises that A & B occupied or for A & B's work for Fina, but that the second paragraph withheld coverage from Fina for liability arising out of any act, error, or omission of Fina. In other words, Continental's position is that the policy excluded coverage for Fina's own negligence.[2]

---

1. We note that the purchase orders are dated August 22, 1997 and August 25, 1997, more than a week after Wisdom's injury. Therefore, even if the purchase orders constitute Fina's acceptance that formed the contract, there still would be no coverage at the time of the injury.

2. In response to Continental's argument, Fina contends that coverage was not negated by the exclusion in the policy for four reasons: (1) Continental judicially admitted that the exclusion did not apply, (2) Continental did not properly plead the exclusion, (3) Conti-

nental misinterpreted the exclusion, and (4) Continental's interpretation of the exclusion had not been approved by the State Board of Insurance and was, therefore, void.

First, the "judicial admissions" occurred during the deposition testimony of Continental's corporate representative as he replied to hypothetical questions posed by Fina's counsel. These replies were neither clear, deliberate, nor unequivocal, as required for a judicial admission. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex.2000). Second, Continental pleaded the exclusion as

██ An insurer's duty to defend is determined under the "eight-corners" rule by looking to the allegations in the pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). In applying the eight-corners rule, a court must give the allegations in the petition a liberal interpretation. *Id.* Generally, the insurer has a duty to defend if the petition potentially states a cause of action within the policy coverage. *Id.*

In this case, the plain language of the exclusion provided that the additional-insured endorsement "does not apply to ... any liability arising out of any act, error or omission of the additional insured, or any of its employees." Wisdom's petition did not allege any acts of negligence or any tortious acts or omissions of A & B.[3] The only allegation that connected the alleged negligence of Fina to the premises occupied by A & B or A & B's work for or on behalf of Fina was the allegation that Fina was negligent in "demanding that A & B proceed to unload unbanded steel without proper equipment." Thus, although Fina's liability arose out of the premises occupied by A & B, Fina's liability also arose solely out of the acts, errors, or omissions of Fina or its employees. Therefore, even if Fina was an additional insured at the time of the accident, coverage under that endorsement did not apply.

We sustain Continental's second issue.

Because we have held that Fina was not an additional insured under A & B's commercial general liability policy on August 14, 1997 and have, alternatively, determined that, even if Fina was an additional insured, it was not covered by the policy because of the exclusion for liability arising from the additional insured's own negligence, we need not consider Continental's remaining two issues regarding whether Continental's duty to indemnify was established as a matter of law and whether Fina was required to segregate its attorney's fees.

## III. Fina's Appeal

██ In its second issue, Fina contends that the trial court erred in rendering partial summary judgment that Continental did not waive its right of subrogation against Fina. Fina recognizes that the endorsement that provided for waiver of subrogation rights required that the waiver be in writing. Fina argues that "substantial summary judgment evidence" of an agreement in writing to waive subrogation was shown by the written bid by A & B to Fina proposing to furnish insurance, along with A & B's awareness that Fina required that subrogation rights be waived, and that the reference to insurance in the bid was "intended to reflect" the agreement to waive subrogation.

a denial of coverage in its first amended counterclaim for declaratory relief. That pleading was sufficient to place the issue before the trial court and to preserve the issue for review. Third, Fina's argument regarding the proper interpretation of the exclusion is grounded on Fina's assertion that Wisdom's petition alleged A & B's negligence. It did not. Finally, if, as argued by Fina, the exclusionary language is unenforceable because the policy form at issue was not approved by the State Board of Insurance, the policy is not void, but voidable. *See Urrutia v. Decker*, 992

S.W.2d 440, 443 (Tex.1999). The insured may elect to rescind it, in which case, Fina would not be insured. *Id.* However, if Fina elects to accept the insurance, it must do so under the agreed terms. *Id.*

3. Fina asserts in its brief, "The pleadings contain numerous allegations of negligence against A & B." In fact, the petition mentions A & B only once, and in that reference, does not allege that A & B was negligent in any manner.

Fina's own argument shows that there was no agreement in writing to waive subrogation. A & B's bid made a single mention of insurance, with no specific details or terms. The bid made no reference at all to subrogation or a waiver. Because there was no language that created an ambiguity in the bid, the awareness and intention of A & B and Fina are irrelevant.

■ Fina also argues that subrogation of an insurer against its insured has been rejected in Texas, citing *Texas Association of Counties County Government Risk Management Pool v. Matagorda County,* 52 S.W.3d 128 (Tex.2000). *Texas Association of Counties* does not apply to this case. The subrogation sought by Continental is in connection with moneys paid on Wisdom's worker's compensation claim. Fina was specifically excluded from coverage as an additional insured on A & B's worker's compensation insurance policy. Therefore, Continental was not seeking subrogation against its insured. Furthermore, the waiver endorsement, by its own terms, applied only to commercial general liability insurance and owners and contractors protective liability insurance. Accordingly, the trial court did not err in granting Continental's motion for partial summary judgment on the ground that Continental did not waive subrogation.

We overrule Fina's second issue.

Because we have sustained Continental's first two issues, we need not reach Fina's first issue, which challenges the trial court's denial of Fina's pre-tender defense costs.

## CONCLUSION

We reverse the judgment and render judgment that Fina take nothing by way of its suit against Continental.

Justice KEYES concurring.

EVELYN V. KEYES, Justice, concurring.

The majority holds that Fina was never an additional insured under A & B's insurance policies. Because I believe established law requires us to find that Fina became an additional insured under on A & B's GCL policy on August 18, 1997, when the certificate of insurance naming Fina as an additional insured was issued by Continental, four days after Wisdom's injury, I concur in the judgment only.

## I. Continental's Appeal

The Additional Insured Endorsement provided with A & B's Continental insurance policies states that a person or organization becomes an additional insured only "if [1] you [A & B] are required to add another person or organization as an additional insured on this policy under a written contract or agreement currently in effect, or becoming effective during the term of the policy, and [2] a certificate of insurance has been issued." The majority construes these provisions as *conditions precedent* to adding an insured to A & B's policies. It reasons that the August 12, 1997 letter from A & B to Fina, offering "to furnish labor, tools, material (not furnished by Fina), equipment, insurance and supervision to complete steel erection for the above referenced buildings," was insufficient to satisfy the condition in the Additional Insured Endorsement that A & B be "required to add another person or organization as an additional insured on this policy under a written contract or agreement." Since this condition was not fulfilled, Fina was never insured by Continental, despite the acknowledged intentions of the parties and the issuance of a certificate of insurance expressly amending A & B's Continental insurance policies to add Fina.

The majority acknowledges that Fina orally accepted A & B's offer to insure it on August 12, the day the offer was made; that, on that same day, A & B asked Continental to add Fina to its insurance policies; and that, on August 18, A & B's insurance agent issued a certificate of insurance showing A & B as the insured under various Continental policies and Fina as the certificate holder. However, the majority opines that the first condition precedent to Fina's addition as an insured on A & B's policies could be fulfilled only by a legally enforceable written contract requiring A & B to insure Fina under specific terms; and it points out that the certificate of insurance contained the following disclaimer: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder [Fina]. This certificate does not amend, extend or alter the coverage afforded by the policies below." Therefore, in the majority's view, Fina did not become an insured even though, under the heading, "Additional Insured," the certificate provided:

> FINA, its parent, subsidiaries and affiliated companies, and their respective employees, officers and agents shall be named as additional insured in each of Contractor's policies, except Workers' Compensation; however, such extention [sic] of coverage shall not apply with respect to any obligations for which FINA has specifically agreed to indemnify Contractor.

Since, in its view, Fina never was added to A & B's insurance policies, the majority holds that Continental did not waive its subrogation rights against Fina, even though, again, the certificate of insurance provided, under the heading, "Subrogation":

> All policies shall be endorsed to provide that underwriters and insurance companies of Contractor shall not have any right of subrogation against FINA, its parent, subsidiaries and affiliated companies, and their respective agents, employees, officers, invitees, servants, contractors, subcontractors, underwriters and insurance companies.

Likewise, because a condition precedent to the addition of Fina as an insured in the Additional Insured Endorsement was not satisfied, the additional provisions in the Endorsement—limiting Fina's coverage to damages for liability arising out of premises A & B owned, rented, leased, or occupied or to coverage for A & B's work for or on behalf of Fina and excluding coverage for exemplary damages assessed against Fina and for Fina's own acts and omissions—never took effect. Nor did the provision stating that, if A & B agreed in writing to waive its right of recovery against any person or organization prior to the date of a loss, Continental likewise waived any right of recovery it might have against Fina because of payments it made for injury or damage arising out of A & B's work done under a contract with Fina.

None of the foregoing writings, in the majority's view, formed any part of the final contract formed between A & B and Fina or formed a contract between and among A & B, Continental and Fina. Rather, the majority holds that all prior oral and written negotiations and agreements between A & B and Fina merged into two purchase orders issued by Fina on August 22 and 25, 1997 for the proposed work showing A & B as the vendor and were extinguished. The majority observes that the reverse side of the purchase orders contains terms and conditions of the sale, as well as a merger clause, but that these terms and conditions do not refer to the provision of insurance by the seller to the buyer. Since the purchase orders do not provide for insurance or indemnity for

Fina, or for waiver of subrogation rights by Continental, the majority holds that Fina cannot claim a right to a defense, to insurance, to indemnity, or to any other protection afforded by A & B's insurance policies, regardless of any claim made against it in connection with its contract with A & B.

I disagree. I would hold that A & B's August 12, 1997 proposal and Fina's acceptance were preliminary negotiations and agreements that merged into a legally enforceable insurance contract between and among A & B, Fina, and Continental with Continental's issuance of a certificate of insurance on August 18, amending A & B's policies to add Fina. Fina's August 22 and 25, 1997 purchase orders concerned a substantially different matter—Fina's purchase of labor and equipment from A & B to erect structural steel for the "Train 9" project under terms stated in the purchase orders. The merger clauses in these two orders, by their express terms, extinguished only "inconsistent" prior proposals, quotes, and written contracts. Since neither A & B's obligation to insure Fina with respect to the project nor the contract of insurance is inconsistent with A & B's purchase of labor and equipment from Fina, the insurance contract adding Fina as an additional insured is, in my view, valid and took effect under its terms on August 18, 1997, four days after Wisdom's accident.

I would further hold that the requirement of a written contract obligating A & B to insure Fina is not a condition precedent to Fina's addition to A & B's Continental insurance policies, but a covenant that was satisfied by Continental's issuance of a certificate of insurance expressly amending A & B's policies to add Fina.

### Formation of Contract

Insurance policies are contracts, and their construction is governed by the rules of construction applicable to all contracts. *Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738, 740–41 (Tex.1998); *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). In construing a written contract, the primary goal of the court "is to give effect to the written expression of the parties' intent." *Balandran,* 972 S.W.2d at 741. Moreover, insurance policies are interpreted and construed liberally in favor of the insured and strictly against the insurer, especially when the court is dealing with exceptions and limitations. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex.1990); *Simpson v. GEICO Gen. Ins. Co.,* 907 S.W.2d 942, 945 (Tex.App.-Houston [1st Dist.] 1995, no writ).

A contract is established when agreement is reached on all terms, and preliminary agreements are expressly or impliedly incorporated into the final offer and acceptance. *Kuzel v. Aetna Ins. Co.,* 650 S.W.2d 193, 195(Tex.App.-San Antonio 1983, writ ref'd n.r.e.); *Ark. Oak Flooring Co. v. Mixon,* 369 S.W.2d 804, 807(Tex.Civ.App.-Texarkana 1963, no writ) (oral agreement is not superseded or invalidated by subsequent integration or by written agreement if agreement is not inconsistent with integrated contract). As in all contracts, the offer and acceptance in insurance negotiations must be such as to evidence a complete agreement, or no obligations arise. *Republic Nat'l Life Ins. Co. v. Hall,* 149 Tex. 297, 232 S.W.2d 697, 699 (1950); *Durham Life Ins. Co. v. Cole,* 608 S.W.2d 838, 839 (Tex.Civ.App.-Eastland, 1980, writ ref'd n.r.e.).

Merger occurs when the parties to an earlier agreement enter into a subsequent written integrated agreement covering the same subject matter. *Fish v. Tandy Corp.,* 948 S.W.2d 886, 898(Tex.App.-Fort Worth 1997, pet. denied). In a contract case, whether merger has occurred is

largely a matter of the intention of the parties. *Id.* Before one contract is merged into another, the last contract (1) must be between the same parties as the first; (2) must embrace the same subject matter; and (3) must have been so intended by the parties. *Id.* Preliminary negotiations, whether written or unwritten, that have led to the execution of a written agreement are merged in it, and the writing must be taken as expressing the final views of the parties. *Gulf Oil Corp. v. Spence & Howe Constr. Co.,* 356 S.W.2d 382, 385–86 (Tex. Civ.App.-Houston 1962), *aff'd,* 365 S.W.2d 631 (Tex.1963); *Schultze v. Schultze,* 209 S.W.2d 791, 795 (Tex.Civ.App.-Eastland 1948, writ ref'd n.r.e.). A subsequent agreement supersedes the original agreement, however, only to the extent of any inconsistencies. *Leon Ltd. v. Albuquerque Commons P'ship,* 862 S.W.2d 693, 700 (Tex.App.-El Paso 1993, no writ). Subsequent integration will not supersede or invalidate a written agreement relating to the same subject matter if the agreement is such that it might naturally be made as a separate agreement. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 32 (1958); *Fish,* 948 S.W.2d at 898; *Leon Ltd.,* 862 S.W.2d at 700–01.

Here, A & B's August 12, 1997 proposal offered "to furnish labor, tools, certain materials (not furnished by Fina), equipment, *insurance,* and supervision to complete the steel erection for the above-referenced buildings," *i.e.,* buildings for the Train 9 project (emphasis added). Fina orally accepted this offer the same day; and, on that day, A & B notified its insurance carrier, Continental, to add Fina as an additional insured to its policies. A & B's proposal, Fina's acceptance, A & B's notification of Continental, Continental's issuance of the certificate of insurance adding Fina to A & B's policies, and the policies themselves, evidence a clear intent on the part of A & B, Fina, and Continental to furnish insurance to Fina for the Train 9 project under specific terms. This intent is fully consistent with and finalizes the intent expressed by the parties in their prior oral and written negotiations and agreements that Fina be added to A & B's Continental insurance policies for the Train 9 project. The preliminary communications merged into the written contract of insurance on August 18, 1997, when the certificate of insurance amended Continental's policies to add Fina.

The purchase orders executed by Fina on August 22 and 25 constitute a separate contract from the insurance contract: these comprised a commercial contract between A & B and Fina finalizing the terms of the purchases reflected in the orders. A & B's August 12 proposal to furnish labor, tools, and certain equipment for the Train 9 project merged into this final agreement; and, to the extent the proposal was inconsistent with the purchase orders, it was extinguished. The merger clause on the back of the August 22 and 25 orders merely memorializes the merger doctrine; it does not change that doctrine. *See Fish,* 948 S.W.2d at 898. Since the terms of the purchase orders are not inconsistent with the terms of the insurance contract, but instead pertain to a separate agreement between A & B and Fina covering a different subject matter, the insurance agreement between and among A & B, Fina, and Continental did not merge into the purchase orders and was not extinguished by them.

Nevertheless, because, under the express terms of the Additional Insured Endorsement, A & B's insurance policies were amended to insure Fina on August 18, 1997, the date the certificate of insurance issued, Fina was not insured by Continental on August 14, 1997, the date Wisdom was injured. *See Republic Nat'l Life Ins. Co. v. Hall,* 232 S.W.2d at 699 (offer

and acceptance in insurance negotiations must be such as to evidence complete agreement, or no obligations arise); *Inglish v. Prudential Ins. Co.*, 928 S.W.2d 702, 706 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (there is no insurance contract unless and until application for insurance is accepted by insurer). Fina was, therefore, not insured by Continental for Wisdom's injury and Continental had no obligation to defend or cover Fina for Wisdom's claims.

### Conditions Precedent

I also respectfully disagree with the majority's interpretation of the provision in the Additional Insured Endorsement that A & B must be required by a written contract to add Fina as an additional insured on its Continental policies as a condition precedent to the addition of Fina to those policies which could be satisfied only by a *prior written agreement legally binding A & B to insure Fina;* and I disagree with its holding that the terms of the provision were not satisfied because A & B's August 12, 1997 written proposal to insure Fina for the Train 9 project was not a legally binding agreement to insure Fina.

It is well established that, because of their harshness, conditions are not favored in Texas law; and, in construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976); *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 627 (Tex.App.-San Antonio 1996, writ denied). Whether a certain contractual provision is a condition rather than a promise must be gathered from the contract as a whole and from the intent of the parties. *Hohenberg Bros.*, 537 S.W.2d at 3; *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 354 (Tex.App.-Houston [1st Dist.] 1995, no writ). Where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition. *Hohenberg Bros.*, 537 S.W.2d at 2; *Belmont Constructors*, 896 S.W.2d at 357. Courts must presume that the objective of an insurance contract is to insure and should not construe a policy to defeat that objective unless the language requires it. *Goswick v. Employers' Cas. Co.*, 440 S.W.2d 287, 289 (Tex.1969); *Warrilow v. Norrell*, 791 S.W.2d 515, 524 (Tex.App.-Corpus Christi 1989, writ denied).

It is much more reasonable to construe the provision in the Additional Insured Endorsement that A & B be required by a written contract to insure Fina as a covenant that was satisfied by the contract insuring Fina which became effective on August 18, when the certificate of insurance issued, rather than as a condition requiring a separate, legally enforceable prior agreement to insure as a necessary prerequisite for the addition of an insured to A & B's Continental policies. Not only is the majority's interpretation of the provision unreasonable, the majority construes the Additional Insured Endorsement strictly against the *insured* and in favor of the insurer who drafted it, contrary to established authority; and it construes the Endorsement in such a way as to defeat the acknowledged intent of the parties and the objective of insuring Fina expressly stated in the certificate of insurance. The majority's holding is, therefore, contrary to established law.

Moreover, an insurer's insertion of a condition precedent to the formation of insurance contracts into its policies that is designed to and does thwart the legitimate expectations and intentions of potential insureds, through language that gives no hint of its draconian consequences, is

clearly against public policy. *See Goswick,* 440 S.W.2d at 289 (courts must presume that the objective of an insurance contract is to insure and should not construe a policy to defeat that objective unless the language requires it); *see also DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677 (Tex.1990) (the most basic policy of a law is the protection of the parties' justified expectations); *Chase Manhattan Bank, N.A. v. Greenbriar North Section II,* 835 S.W.2d 720, 723, 725 (Tex.App.-Houston [1st Dist.] 1992, no writ) (same; parties may not include conditions in their contracts that violate law or public policy).

For the foregoing reasons, I concur with that part of the judgment disposing of Continental's appeal on the grounds that Fina was not insured by A & B's policies on August 14, 1997, the date of Wisdom's injury, but not for the majority's reasons.

## II. Fina's Appeal

In response to Fina's appeal, the majority affirms the trial court's ruling that Continental did not waive its right of subrogation against Fina. However, it rules as it does because of its narrow construction of the contract between Fina and A & B. It observes that A & B's proposal makes a single mention of insurance, with no specific details or terms, and that the proposal makes no reference at all to subrogation or a waiver. It concludes that, because there is no language to create an ambiguity in the offer, the awareness and intention of A & B and Fina are irrelevant. I again disagree.

The certificate of insurance issued by A & B's insurer on August 18, 1997 expressly provides that Fina is an additional insured as of the date of issuance of the certificate and that "[a]ll policies shall be endorsed to provide that underwriters and insurance companies of Contractor shall not have any right of subrogation against FINA." The

problem is that the insurance policy did not take effect until August 18, 1997, after Wisdom's accident.

Fina also argues that subrogation of an insurer against its insured has been rejected in Texas, citing *Texas Association of Counties County Government Risk Management Pool v. Matagorda County,* 52 S.W.3d 128, 134 (Tex.2000). I agree; but *Texas Association of Counties* also holds that an insurer paying a claim under a policy is equitably subrogated to any claim the insured may have against a third party responsible for the insured's injury. *Id.* at 133. As Fina was not insured by Continental under A & B's policies on August 14, 1997, the date of Wisdom's injury, Continental was not seeking subrogation against its insured when it sought subrogation to Wisdom's rights against Fina; Fina is a third party with respect to Continental for Wisdom's claims against it. I concur, therefore, in the majority's holding that Continental did not waive its right of subrogation to Wisdom's rights to recover from Fina.