FARMERS INSURANCE EXCHANGE,
Appellant,

v.

Richard K. NEAL, Appellee.

No. 06–03–00026–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 15, 2003.

Decided Oct. 29, 2003.

Rehearing Overruled Nov. 18, 2003.

Reid Wm. Martin, Sammons & Parker, PC, Tyler, for appellant.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

This appeal turns on whether two race cars, and associated automobile parts, owned by Richard K. Neal, were vehicles "used for recreational purposes" within the meaning of Neal's standard homeowners insurance policy issued by Farmers Insur-

ance Exchange (Farmers) or, more precisely, whether there was sufficient evidence presented at trial that they were so used. Because we find there is sufficient evidence supporting the trial court's judgment, we affirm.

*Background*

During the time period 1992 to 1996, Neal purchased two race cars—a Boulton Supercomp Dragster and a Don Davis Super Gas Roadster. The race cars were kept on Neal's residence premises in a building used as a workshop, garage, and storage facility. In December 1996, the race cars were destroyed when the building burned, leaving nothing of residual salvage value. Shortly after the fire, Neal filed a claim under his homeowners insurance policy, and Farmers paid the portion of his claim representing the building and some personal property. Farmers, however, refused to pay the remainder of Neal's claim, arguing that the destroyed race cars and related components (e.g., a Barry Grant fuel pump and Chuck Nuytten alcohol carburetor) were expressly excluded under Neal's policy. Neal subsequently sued Farmers, seeking compensation for the loss of the disputed property as well as for statutory penalties and cleanup and removal costs. Following a bench trial in October 2002, a Titus County trial court ruled in favor of Neal, ordering Farmers to pay $119,733.15.[1] Farmers now appeals, questioning the legal and factual sufficiency of the trial court's determination that Neal's two race cars were covered under his homeowners insurance policy.

*Standard of Review*

When reviewing a trial court's findings for legal and factual sufficiency, appellate courts should apply the same standards that would be used in reviewing evidence supporting a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). Recognizing that "findings of fact issued in a bench trial have the same force and dignity as a jury's verdict," we note that the trial court's findings "are not conclusive when there is a complete statement of facts in the record." *Tucker v. Tucker,* 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). In such a situation, appellate courts are not bound by the trial court's findings, *id.,* but may overturn them only if, after weighing all the evidence in the record, they "are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996).

A trial court's conclusions of law are always reviewable. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). They "will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence" and, unless erroneous as a matter of law, will not be reversed. *Id.* In conducting a de novo review, appellate courts may reexamine for correctness legal conclusions drawn from specific findings of fact contained in the record, *id.* at 196 & n. 1, and exercise their own judgment on each issue, affording no deference to the original tribunal's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1999).

---

1. The court ordered Farmers to pay Neal $42,017.00 in damages, $41,854.40 as a penalty for noncompliance with Article 21.55 of the Texas Insurance Code (calculated at eighteen percent per annum from March 27, 1997 to October 8, 2002), $21,857.49 in prejudgment interest (calculated at ten percent per annum from July 26, 1997 to October 8, 2002), and $14,004.26 in attorney's fees. *See* TEX. INS.CODE ANN. art. 21.55 (Vernon Supp. 2003). The court also ordered postjudgment interest on the total judgment of $105,728.89 (excluding attorney's fees) to be calculated at ten percent per annum from October 8, 2002.

*Recreational Purposes?*

■ To determine this coverage question, we must carefully examine the policy language underlying the dispute. Insurance policies are contracts subject "to the same rules of construction as other contracts," and "[o]ur primary goal, therefore, is to give effect to the written expression of the parties' intent." *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 740 (Tex.1998). In interpreting an insurance policy, it will be "construed liberally in favor of the insured and strictly against the insurer, especially when ... dealing with exceptions and limitations." *Cont'l Cas. Co. v. Fina Oil & Chem. Co.,* —— S.W.3d ——, No. 01–02–00449–CV, 2003 WL 21470362, 2003 Tex.App. LEXIS 5353 (Tex.App.-Houston [1st Dist.] June 26, 2003, no pet.) (citing *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex. 1990)).

Although Neal and Farmers agree that the contract language is unambiguous, each party urges this Court to adopt a different interpretation. The policy itself expressly excludes from coverage any "motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment." As a limited exception to this provision, the policy also provides coverage for certain vehicles that (1) "are not subject to motor vehicle registration" and (2) are "vehicles or machines used for recreational purposes while located on the residence premises." (Emphasis omitted.) Because there is no disagreement that Neal's race cars were not subject to motor vehicle registration, the difference in the parties' interpretations results from the wording of the exception's second element. Neal contends the policy covers vehicles used for recreational purposes as long as they are on the premises at the time of the loss, while Farmers contends the policy covers vehicles used for recreational purposes so long as such recreational use occurs on the residence premises. After briefing the location issue in that fashion, Farmers conceded at oral argument that otherwise covered vehicles do not become uncovered because their recreational use occurs off premises. We agree, and now focus on the recreational component of the coverage issue.

That parties may advance conflicting interpretations of a contract does not necessarily mean the contract is, in fact, ambiguous. *Columbia Gas Transmission Corp. v. New Ulm Gas,* 940 S.W.2d 587, 589 (Tex.1996). The contract must be examined as a whole in order to ascertain whether there is only one reasonable interpretation, permitting a court to provide "a definite or certain meaning as a matter of law." *Id.* The pertinent contract language at issue states: "[W]e do cover ... vehicles ... used for recreational purposes...." (Emphasis omitted.) We now examine this statement in light of the contract as a whole and determine whether the exception is broad enough to include Neal's race cars.

Farmers maintains that Neal's race cars were excluded from coverage because they were not "vehicles used for recreational purposes" in the context of the exception to the policy's general exclusion of motor vehicles. Recreation is generally defined as "refreshment by means of some pastime, agreeable exercise, or the like," or as "a pastime, diversion, exercise, or other resource affording relaxation and enjoyment." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1613 (2d ed.1987). Neal's position is that because he drove and worked on his race cars for fun, or as a diversion or hobby, his activities with respect to the cars conform to this general definition. In other words, because Neal's race cars were used as a means of refresh-

ment or diversion, it is the equivalent of saying they were used for recreational purposes.

Attempting to strengthen this argument, Neal cites *City of Bellmead v. Torres,* in which the Texas Supreme Court noted that the Legislature's definition of "recreational purposes" included "activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, *pleasure driving,* nature study, water skiing and water sports." *City of Bellmead v. Torres,* 89 S.W.3d 611, 613 (Tex.2002) (emphasis added). We find wholly unpersuasive Neal's comparison of the Legislature's use of "pleasure driving" to the only activities for which Neal's race cars are suited. It is highly unlikely that the Legislature, when using the term "pleasure driving," envisioned individuals "screaming" down a straight, quarter-mile stretch of pavement. It seems incongruous to think of these vehicles as being driven for pleasure. One of Neal's race cars, for example, has a 230–inch wheelbase; can only burn methanol or high-octane automotive fuel; has only two speeds: idle or "wide open" (i.e., the car either idles or travels at speeds approaching 165 miles per hour); has an extremely limited turning radius, as it is designed to travel in a straight line; requires coolant and fuel to be replenished after every quarter mile; and must be stopped by parachute. Neal's own testimony reveals that, if the car was driven even for a mile or two, its transmission would "blow up."

While not in itself dispositive, it is instructive to note other types of motor- or engine-propelled vehicles that are specifically excepted from the policy's general exclusion in order to determine whether the race cars described above could possibly have been contemplated by the parties. Excepted, for example, are devices for assisting the handicapped, power mowers, golf carts, and farm equipment. It is high-

ly unlikely that Neal's race cars would normally be included in the same category as these less mechanically sophisticated (and much less expensive and dangerous) vehicles; however, the additional phrase characterizing excepted vehicles as those "used for recreational purposes" still suggests the possibility of coverage.

One difficulty with Neal's application of the general definition of recreation to the facts in this case is that it invites use of a substantially subjective test. We recognize that, although there are many categories of activities generally recognized as recreational, to adopt a definition of recreation that includes any activity one enjoys would undermine any purposeful exclusion of property as inevitably must be considered in the context of homeowners insurance coverage. To some, even an activity as mundane as gardening may be considered recreational; to others, gardening may be viewed as an interminably tiresome chore. Similarly, while Neal undoubtedly enjoyed working on, maintaining, and racing his cars, it is just as likely that others would consider such activities unpleasant, tedious, and hazardous—not recreational.

If we were to adopt a definition as global as Neal suggests, it would be particularly significant that even Neal's characterizations of his race cars were not altogether consistent. The record indicates that, during the four tax years from 1992 through 1995, Neal himself categorized his race cars as being used for business purposes and, while depreciating their value in each of the four tax years, conspicuously failed to include them in Part V of IRS Form 4562, which asks taxpayers to list, among other things, automobiles, other vehicles, and property used for entertainment, recreation, or amusement. This, however, is only some evidence against Neal's position

that he used his race cars for recreational purposes.

■ Although reasonable minds may differ in their view of what constitutes a recreational activity or, more specifically, what is encompassed in the phrase "vehicles used for recreational purposes," it is Farmers' unfortunate position to have state-approved or state-promulgated forms[2] to use in its homeowners policies that employ that rather elastic language. Not only are exceptions and limitations to coverage generally construed strictly against the insurer and in favor of the insured, *Hallman v. Allstate Ins. Co.*, 114 S.W.3d 656, 660 (Tex.App.-Dallas, 2003, no pet.), but courts must also "adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991). Although we are not bound by the trial court's findings, we may overturn them only if, after weighing all the evidence in the record, we determine they are "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz*, 917 S.W.2d at 772.

Neal testified he and his son took the dragster to the races during the warmer months of the year as a "recreational activity," before preparing for hunting season. Neal also testified that, during the cooler months, he and his son would work on their cars as a father and son activity and would "play with them, monkey with them, tinker with them ... for enjoyment," "for fun," and "for recreational purposes." Neal's wife agreed with the "recreational purposes" categorization of the activity.

Neal testified that, in season, the family would take the dragster to races approximately once a month, depending on the family budget; that, although he did win money on occasion, he never won enough in any race to pay the expenses he and his family incurred in getting to and participating in it, and that he justified the loss of money because he considered it "recreational activity." Neal described two categories of participants on the racing scene, "Sportsman," into which he and other hobbyists and part-timers fell, and "Professional," consisting of those who raced as a business. He noted that, in contrast to Neal's racing practices, the business racers treat racing like a job, working on it "every day of the week" and going to all the races they can find.

We are called on to determine whether, considering the evidence as a whole, the trial court's finding of recreational use was against the great weight and preponderance of the evidence. We conclude the evidence was sufficient to support the trial court's finding that Neal's race cars were used for "recreational purposes," within the common meaning of that phrase, that is, for "refreshment by means of some pastime," or as "a pastime, diversion, exercise, or other resource affording relaxation and enjoyment." RANDOM HOUSE DICTIONARY, pg. 1613.

*Intentional Misrepresentation?*

■ Farmers also contends that Neal's policy was void because Neal intentionally concealed or misrepresented material facts or circumstances. Specifically, Farmers contends Neal intentionally concealed the existence of the race cars because he did not own them at the time he purchased his insurance policy and failed to affirmatively disclose to Farmers that he subsequently purchased the cars and was storing them

---

**2.** *See* TEX. INS.CODE ANN. art. 5.35 (Vernon Supp.2003).

on the residence premises. The record itself contains no evidence Neal intended to conceal or misrepresent material facts in an effort to defraud Farmers. On the contrary, the record reflects that, on at least two occasions, Neal contacted Farmers with information he thought relevant to the policy in question, thinking that adjustments to the policy might be necessary. Farmers was certainly entitled to be informed of the existence of this highly unusual property, but we find there was sufficient evidence to support the trial court's conclusion that Neal's failure to report the purchase did not amount to intentional concealment, misrepresentation, or fraud.

We, therefore, affirm the judgment of the trial court.